**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOBY D. JERRELLS**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Jan 17 2012, 9:37 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JEROME MAXWELL, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| vs. | ) No. 49A04-1101-CR-6 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa Borges, Judge
Cause No. 49G04-0910-FA-86943

**January 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Jerome Maxwell was convicted in Marion Superior Court of one count of Class A felony child molesting and two counts of Class C felony child molesting and was sentenced to an aggregate term of forty years incarceration. Maxwell appeals and presents numerous issues, which we reorder, renumber, and restate as the following eight:

I.      Whether the trial court abused its discretion in permitting the State to call as a witness the victim's young sister;

II.     Whether the trial court abused its discretion in denying Maxwell's motion for a mistrial;

III.    Whether the trial court abused its discretion in propounding certain jury questions to the witnesses;

IV.    Whether the prosecutor committed various acts of misconduct;

V.     Whether the trial court abused its discretion in permitting a police detective to testify regarding the content of telephone calls Maxwell made while in jail;

VI.    Whether the trial court committed fundamental error in instructing the jury regarding unanimity;

VII.   Whether Maxwell's convictions for Class C felony child molesting constitute double jeopardy; and

VIII.  Whether Maxwell's forty-year sentence is inappropriate.

We affirm.

<b>Facts and Procedural History</b>

At the time relevant to this appeal, T.H. ("Mother") and Ra.H. ("Father") were married and had three children: the seven-year-old victim in this case, R.H., her three-year-old sister C.W., and a younger brother. In 2009, Mother started school to study nursing. When she first started school, Mother's sister watched the children while

2

Mother was at school. But in March of 2009, Maxwell, who is Mother's uncle, began to watch the children both at their home and at his house.

On one occasion while Maxwell watched the children at Mother's home, Maxwell took R.H. into her brother's room and attempted to take off her pants. He told her, "Don't worry, nothing's gonna happen," and "Don't tell anyone, it's private." Tr. pp. 49, 51. Maxwell then pulled R.H.'s underwear down to her ankles and touched her bottom. On another occasion, Maxwell touched R.H. on the outside of her clothes in her genital area. Maxwell then touched R.H.'s vaginal area, moving his fingers around the inside of her labia, which felt "really scary" to her. Id. at 55-56.

On another occasion, Maxwell touched R.H. with his hands on her bottom. She described this as being "a little bit inside" her bottom. Tr. pp. 58-60. Maxwell instructed R.H. to not tell anyone about what he had done to her, and R.H. was afraid that she would be in trouble if she told anyone. R.H. later explained that Maxwell touched her every time he watched her.

On September 17, 2009, Father was helping C.W. use the restroom at a department store when C.W. told him something that made him concerned. After they left the store, he asked R.H. what happened when Maxwell babysat her. R.H. initially stated that she watched television and played, but upon further questioning she began to cry. She then told her father that Maxwell touched her "potty." Tr. p. 219. Father called the family pediatrician and then took R.H. to the hospital, where she was examined by a sexual assault examination nurse. The examination results were normal, which is not unusual of children who have been sexually molested.

On September 22, 2009, R.H. was interviewed at the Child Advocacy Center by Jill Carr ("Carr"), a forensic interviewer for Child Protective Services. Indianapolis Metropolitan Police Detective Shawn Looper ("Detective Looper") then began to investigate R.H.'s allegations. Detective Looper interrogated Maxwell, who denied the allegations. On October 14, 2009, the State charged Maxwell with two counts of Class A felony child molesting and two counts of Class C felony child molesting, all alleging that R.H. was the victim.

While in jail, Maxwell made several telephone calls that were recorded. Detective Looper reviewed the calls Maxwell made in jail and took notes about the substance of the calls. However, Detective Looper was later unable to retrieve the actual recorded calls because the jail changed the call logging system. According to Detective Looper's notes, Maxwell made several incriminating statements to his wife during the calls. Specifically, Maxwell told her that "if the accusers don't show up, the State could drop the charges. Call [Mother] and tell her please." Tr. p. 343. He also told his wife, "They show up, I'm totally f**ked. Offer them what you got not to show up. If you hand money to them, get it in writing." Id. Maxwell, demonstrating a serious misunderstanding of the law, further told his wife, "You must do it face to face. If not, it's bribery." Id. at 344. Maxwell later made another telephone call in which he crudely stated, "No semen. Their cherries weren't popped. There is no evidence." Id. at 345.

Prior to trial, the trial court granted, in part, a motion in limine filed by Maxwell, prohibiting any reference to any uncharged past sexual misconduct by Maxwell and reference to Maxwell touching C.W. in a sexual manner. A jury trial commenced on

4

November 15, 2010. During trial, Maxwell twice moved for a mistrial based on alleged violations of the motion in limine, but the trial court denied these motions. On November 16, the jury acquitted Maxwell on one count of Class A felony child molesting but found Maxwell guilty on the remaining count of Class A felony child molesting and two counts of Class C felony child molesting. On December 17, 2010, the trial court sentenced Maxwell to forty years on the Class A felony conviction and concurrent terms of four years on each Class C felony conviction, for an aggregate term of forty years. Maxwell now appeals.

## I. Calling Victim's Sister as a Witness

Maxwell claims that the trial court erred in permitting the State to call as a witness R.H.'s younger sister, C.W. Although a child under the age of ten was formerly presumed to be incompetent, the statute setting forth that presumption was repealed in 1990. See Newsome v. State, 686 N.E.2d 868, 871 (Ind. Ct. App. 1997). Now, Indiana Evidence Rule 601 provides that "[e]very person is competent to be a witness except as otherwise provided in these rules or by [statute.]" When a child is called to testify at trial, the trial court has the discretion to determine if a child witness is competent based on the court's observation of the child's demeanor and responses to questions posed by counsel and the court. Haycraft v. State, 760 N.E.2d 203, 209 (Ind. Ct. App. 2001), trans. denied.

Here, Maxwell does not claim that the trial court erred in permitting C.W. to testify. In fact, the trial court did not permit C.W. to testify because the child was too young and frightened to answer the court's preliminary questions to determine her

5

competence. Thus, Maxwell argues that the trial court erred in permitting the State to call C.W. as a witness at all. We are unable to agree.

Certainly, it would have been more prudent for the trial court to have excused the jury before C.W. took the stand. That way, the parties and the court could have better assessed the young child's competence to testify. Instead, the jury was exposed to a child too young and frightened to even speak in court. That having been said, however, the fact remains that C.W. provided no testimony. We are unable to say that simply allowing the jury to see C.W. on the stand was error.

Moreover, the time C.W. spent on the witness stand was brief. The trial court asked the child what her name was, and although she was unable to give a verbal response, C.W. did nod her head. When the State attempted to ask even the most basic questions of C.W., however, she was unable to give any response. Thereafter, the trial court found that "[C.W.] is by virtue of her age and apparent emotional state . . . unable to communicate with us out loud here today[.]" Tr. p. 41. The State then proceeded to its next witness. Again, the better practice would have been to determine C.W.'s ability to testify outside the presence of the jury. But we are unable to say that the brief time C.W. spent on the witness stand in the presence of the jury was reversible error when her time on the stand was brief and when she was unable to provide any testimony or other evidence.

## II. Motions for Mistrial

Maxwell also claims that he was denied a fair trial because the jury was exposed to evidence indicating that Maxwell had molested R.H.'s younger sister C.W. in addition

6

to molesting R.H. Maxwell claims that the trial court abused its discretion in denying his motions for mistrial which were made when such evidence was placed before the jury. We have repeatedly explained that "[a] mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation." Henson v. State, 790 N.E.2d 524, 535 (Ind. Ct. App. 2003) (quoting Kirby v. State, 774 N.E.2d 523, 533-34 (Ind. Ct. App. 2002)). The decision to grant or deny a mistrial is within the trial court's discretion, and we will reverse only for an abuse of that discretion. Id. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court. Id. On appeal, we accord the trial court's decision great deference, as it is in the best position to gauge the circumstances and the probable impact on the jury. Id. When determining whether a mistrial is warranted, we consider whether the defendant was placed in a position of "grave peril" to which he should not have been subjected. Id. The gravity of the peril is determined by the probable persuasive effect of the matter complained of on the jury's decision. Id.

Maxwell argues that the trial court erred in denying his motion for a mistrial made after R.H. testified regarding Maxwell touching C.W. He specifically refers to that portion of R.H.'s testimony in which she stated that Father had asked her, "who did this to you *and C.W.*?" Tr. p. 63 (emphasis added). R.H. also testified, "C.W. was there when . . . it . . . happened *and then he did it to her too*." Tr. pp. 96-97 (emphasis added).

Maxwell now claims that these references required a mistrial because they were inadmissible under Indiana Evidence Rule 404(b), were irrelevant, and highly prejudicial. Even if R.H.'s testimony regarding Maxwell molesting C.W. was inadmissible under

7

Evidence Rule 404(b), we disagree with Maxwell that these two statements required the trial court to grant his request for a mistrial.

At the time of the trial, R.H. was an eight-year-old child. And although her testimony regarding what her Father asked her could be taken as evidence that Maxwell molested both girls, there is nothing that suggests that her response was a deliberate attempt to get such evidence before the jury. To the contrary, the State indicated that it had instructed R.H. not to mention that Maxwell had molested C.W. as well. Moreover, R.H.'s reference to C.W. was brief and was in the context of relating Father's question. She did not affirmatively say that Maxwell molested C.W.; only that Father asked her who did "this" to R.H. and C.W. Under these facts and circumstances, we cannot say that the trial court abused its discretion in denying Maxwell's motion for a mistrial.[1]

With regard to R.H.'s testimony that Maxwell "did it to [C.W.] too," we admit that this is evidence more strongly states that Maxwell molested C.W. in addition to R.H. Yet again, we are unable to conclude that the trial court abused its discretion in denying Maxwell's motion for a mistrial. First, it is important to note the context of R.H.'s response. Maxwell's counsel cross-examined R.H. regarding where the various instances of sexual molestation took place and where the other children were at the times of the molestations. On re-direct examination, the State attempted to clarify R.H.'s testimony:

---

[1] Maxwell also takes issue with the trial court's comment that "I thought [R.H.'s response] was very garbled and that's one of the other reasons I don't think that all the . . . jurors heard it at all. I could barely understand what she said." Tr. p. 64. We are certainly in no position on appeal to second guess the trial court with regard to the intelligibility of R.H.'s speech.

| [State]: | About C.W. being – I think the word is "there". If you said C.W. was "there", did that mean in the house, in the room, or something else? |
|---|---|
| [R.H.]: | Something else. |
| [State]: | What did it mean? |
| [R.H.]: | It meant that C.W. was there when -- when it had had [sic] happened and then he did it to her, too. |

Tr. pp. 96-97. Once again, R.H.'s reference to C.W. was brief, and there is again no indication that the State intentionally elicited this response. In fact, R.H.'s reference to Maxwell doing "it" to C.W. was extraneous to her answer to the State's question. We note again that R.H. was a young child undergoing the stressful and emotional experience of testifying at a jury trial. Even though she was instructed not to mention Maxwell's behavior toward C.W., it is not surprising that a small child might "slip up" during her lengthy testimony. Indeed, the trial court noted that R.H. had been testifying for over an hour at the time of her reference to C.W. Tr. p. 104. Moreover, the length of R.H.'s testimony at the time of the statement in question—over one hour in length and covering dozens of pages of transcript—compared to her two brief mentions of C.W. further support the trial court's decision to deny Maxwell's motion for a mistrial.

We further note that the trial court specifically admonished the jury to disregard R.H.'s testimony regarding Maxwell and C.W. as follows:

> With regard to the last question and answer, I'm going to strike that from the evidence and you are instructed that you are to absolutely disregard that last question and answer. And it is not to be considered by you nor discussed among you during this trial, during any recesses, or during your deliberations, all right?

Tr. p. 116-17. Where the trial court adequately admonishes the jury, such admonishment is presumed to cure any error that may have occurred. Johnson v. State, 901 N.E.2d 1168,

9

1173 (Ind. Ct. App. 2009). However, that an admonition is given does not necessarily mean that particularly prejudicial, erroneously admitted evidence will be erased from the minds of reasonable jurors or omitted from their deliberations. Beer v. State, 885 N.E.2d 33, 48 (Ind. Ct. App. 2008).

As set forth in Beer, our supreme court has acknowledged a number of factors to examine when considering the adequacy of striking improper testimony and admonishing the jury:

> (1) the effect of constitutional provisions, statutes or rules relating to harmless error; (2) the degree of materiality of the testimony; (3) other evidence of guilt; (4) other evidence tending to prove the same fact; (5) other evidence that may cure the improper testimony; (6) possible waiver by the injured party; (7) whether the statement was volunteered by the witness and whether there had been deliberate action on the part of the prosecution to present the matter to the jury; (8) the penalty assessed; (9) whether or not the testimony, although volunteered by the witness, was in part brought out by action of the defendant or his counsel; (10) the existence of other errors; (11) whether the question of guilt is close or clear and compelling; (12) the standing and experience of the person giving the objectionable testimony; and (13) whether or not the objectionable testimony or misconduct was repeated.

Id. (citing White v. State, 257 Ind. 64, 69, 272 N.E.2d 312, 314-15 (1971)). We will examine a number of these factors. See id.

Clearly, there was other evidence of Maxwell's guilt outside the brief references to his conduct with C.W. And R.H.'s statements were volunteered and were not the product of any deliberate action by the State to introduce inadmissible evidence to the jury. And as noted, R.H. was not an experienced witness; she was a frightened eight-year-old child in an extremely stressful situation. And although R.H. made the mistake of twice

10

mentioning Maxwell's alleged behavior with C.W.,[2] there is again no indication that her behavior was in any way intentionally designed to introduce inadmissible evidence to the jury. Under these facts and circumstances, we are again unable to say that the trial court abused its discretion in denying Maxwell's motion for a mistrial.[3]

### III. Jury Questions

Maxwell claims that the trial court erred in allowing the jury to propound certain questions to witnesses. Whether to submit a juror's question to a witness is within the discretion of the trial court. Amos v. State, 896 N.E.2d 1163, 1169 (Ind. Ct. App. 2008). We will therefore review the trial court's decision only for an abuse of that discretion. Id. at 1170.

> Indiana Evidence Rule 614(d) provides:
>
> **Interrogation by Juror**. A juror may be permitted to propound questions to a witness by submitting them in writing to the judge, who will decide whether to submit the questions to the witness for answer, subject to the objections of the parties, which may be made at the time or at the next available opportunity when the jury is not present. Once the court has ruled upon the appropriateness of the written questions, it must then rule upon the objections, if any, of the parties prior to submission of the questions to the witness.

A proper juror question is one that allows the jury to understand the facts and discover the truth. Amos, 896 N.E.2d at 1170.

---

[2] Maxwell claims that the trial court improperly stated that it would not consider the cumulative effect of R.H.'s statements. We disagree. In discussing Maxwell's motion for a mistrial with Maxwell's counsel, the trial court simply indicated that it was focusing on R.H.'s most recent statement and did not wish to rehash its prior rulings. See Tr. p. 98 (where trial court stated, "but we're with this incident. So, let's just focus on this one because we're not going to argue about the others again).

[3] Maxwell briefly claims that the trial court's ruling prevented him from cross-examining R.H. regarding prior inconsistent statements. But Maxwell does not explain what the prior inconsistent statements were or precisely how he was prevented from cross-examining R.H. with regard to these inconsistencies.

Here, the trial court submitted the following jury question to Father: "Did you ask R.H. about what happens at [Maxwell]'s house because of what C.W. said in the bathroom at Walmart?" Tr. p. 242. Father responded, "Yes." Id. Maxwell now claims that this question was irrelevant and prejudicial. We disagree. The question was relevant to explain why Father suspected that R.H. might have been sexually molested. Nor do we think it was unduly prejudicial. Neither the question itself nor the response indicate that C.W. was herself molested. Although Maxwell claims that such evidence suggested that he molested C.W., evidence which creates a mere inference of prior bad conduct does not fall within the purview of Evidence Rule 404(b)'s general prohibition of evidence of uncharged crimes, wrongs, or acts. Rogers v. State, 897 N.E.2d 955, 960 n.3 (Ind. Ct. App. 2008), trans. denied; Dixson v. State, 865 N.E.2d 704, 712 (Ind. Ct. App. 2007), trans. denied; Allen v. State, 743 N.E.2d 1222, 1232 (Ind. Ct. App. 2001), trans. denied; see also Haak v. State, 695 N.E.2d 944, 947 (Ind. 1998) (even if witness's testimony that she was afraid of the defendant caused the jury to infer that the defendant had engaged in other crimes, wrongs, or acts, Evidence Rule 404(b) was inapplicable where the witness did not testify as to any conduct by the defendant). Moreover, the question was cumulative of Father's earlier testimony that he questioned R.H. about Maxwell after speaking with C.W. in the restroom. See Goodson v. State, 747 N.E.2d 1181, 1185 (Ind. Ct. App. 2001) (noting that any error in the admission of evidence is harmless when cumulative of properly admitted evidence).

Maxwell also finds fault with the trial court submitting the following jury question to Detective Looper: "Were the names [R.H.] and/or [C.W.] ever used in the calls? If so,

in what context?" Tr. pp. 352-53. Detective Looper responded, "I would have to go through each individual note, but I believe not, no. It was just in reference to them." Id. at 353. Although Maxwell objected to Detective Looper's response to the question, he did not object to the question itself. He has therefore failed to preserve any error in this regard for purposes of appeal. Waiver notwithstanding, we fail to see how the fact that Maxwell mentioned both R.H. and C.W. in his phone calls was unduly prejudicial. It was clear from the other evidence that Maxwell babysat both children. Thus, the fact that he might mention both of them in his telephone calls does not necessarily mean that he was referring to both children as his victims. And again, evidence that merely implies prior misconduct is not prohibited by Evidence Rule 404(b). Rogers, 897 N.E.2d at 960 n.3; Dixson, 865 N.E.2d at 712; Allen, 743 N.E.2d at 1232. Therefore, the trial court did not abuse its discretion in submitting the juror's questions to the witnesses.

### IV. Prosecutorial Misconduct

Maxwell also claims that the prosecutor committed various acts of misconduct. In reviewing a claim of prosecutorial misconduct, we determine first whether the prosecutor engaged in misconduct and, if so, whether that misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. Waldon v. State, 829 N.E.2d 168, 178 (Ind. Ct. App. 2005). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the misconduct. Id.

In order to properly preserve a claim of prosecutorial misconduct for appeal, a defendant must not only raise a contemporaneous objection, he must also request an

13

admonishment and, if the admonishment is not given or is insufficient to cure the error, then he must request a mistrial. Lainhart v. State, 916 N.E.2d 924, 931 (Ind. Ct. App. 2009). If a defendant fails to make an objection, fails to request an admonishment, and fails to move for a mistrial, he forfeits any appellate claim of prosecutorial misconduct. Id. at 290; Adcock v. State, 933 N.E.2d 21, 26 (Ind. Ct. App. 2010) (noting that failure to request an admonishment or move for a mistrial following alleged prosecutorial misconduct results in waiver), trans. denied; see also Flowers v. State, 738 N.E.2d 1051, 1059 (Ind. 2000) (although defendant objected to alleged prosecutorial misconduct at trial, his failure to request an admonition resulted in waiver of the issue on appeal).

Maxwell first claims that the prosecutor engaged in misconduct by calling C.W. to testify. We have already concluded that the trial court did not abuse its discretion in permitting the State to call C.W. as a witness. Moreover, we reject Maxwell's argument that calling C.W. to testify was akin to calling a witness whom the prosecutor knows will refuse to testify based on the right against self-incrimination. See, e.g., Brown v. State, 671 N.E.2d 401, 405 (Ind. 1996) (reaffirming rule that it is impermissible to call a co-defendant or accomplice to testify if the party calling that witness knows that the witness will refuse to testify).

Here, there is no indication that the prosecutor knew that C.W. would be unable to testify, nor has Maxwell referred us to any evidence supporting such a proposition. Moreover, C.W. did not refuse to testify based on the right against self-incrimination; she was simply unable to testify due to her young age. And again, we fail to see how permitting the jury to simply see C.W. constitutes misconduct.

14

Maxwell also insists that the prosecutor engaged in misconduct when it questioned Mother with regard to her children's behavior after Maxwell started to babysit them. The following exchange took place between the prosecutor and Mother:

Q. When the kids first started going to – or when [Maxwell] first started babysitting, how did the children respond?

A. They were okay with it.

Q. Was there a point in time where you noticed that that changed?

A. Yes.

Q. Do you remember about when that was?

A. I don't.

Q. And that's okay. What was the change that you noticed?

A. That C.W. and R.H. didn't want to go anymore. They cried about going.

Q. Okay. So, when it was time to go, they would cry?

A. Yes.

Tr. pp. 287-88. Maxwell now claims that the prosecutor was suggesting that both R.H. and C.W. were molested. We note, however, that there is no indication that Maxwell objected to this line of questioning, that he requested an admonishment, or that he moved for a mistrial. Maxwell therefore failed to preserve any appellate claim of prosecutorial misconduct. See Adcock, 933 N.E.2d at 26.

Even if we considered the merits of this claim, Maxwell would not prevail. The prosecutor's questions merely explained how Mother's children began to be fearful of going to Maxwell. It did not indicate that Maxwell had also molested C.W. Indeed, C.W. would likely be frightened of Maxwell even if she simply witnessed Maxwell molesting R.H. Moreover, Mother's testimony never referred to any conduct by Maxwell. We

15

again note that evidence which creates a mere inference of prior bad conduct does not fall within the purview of Evidence Rule 404(b)'s general prohibition of evidence of uncharged crimes, wrongs, or acts. Rogers, 897 N.E.2d at 960 n.3; Dixson, 865 N.E.2d at 712; Allen, 743 N.E.2d at 1232.

Maxwell also contends that the prosecutor committed misconduct when the State elicited testimony from Mother that she had observed R.H. and C.W. lying in bed together while naked and may have been touching each other in a sexual manner. Tr. p. 295. Although Maxwell objected, his objection was based solely on the leading nature of the prosecutor's question. Id. at 296. And at no time did Maxwell request an admonishment or move for a mistrial. Again, his claim of prosecutorial misconduct is therefore waived. See Adcock, 933 N.E.2d at 26. Waiver notwithstanding, Maxwell fails to explain how this testimony was inadmissible other than to again claim that it might imply that he also molested C.W. Even if we agreed with this proposition, which we do not, the mere inference of other misconduct is not prohibited by Evidence Rule 404(b). Rogers, 897 N.E.2d at 960 n.3.

Maxwell also complains that the prosecutor engaged in misconduct when, in the State's closing argument, the prosecutor stated that Mother "never once thought [Maxwell] was the kind of person that would do this to her *children*." Tr. pp. 424-25 (emphasis added). Yet again, however, Maxwell did not object to this statement, did not request an admonishment, and did not move for a mistrial. The issue is therefore waived. See Adcock, 933 N.E.2d at 26. Waiver notwithstanding, Maxwell would not prevail. The prosecutor's reference to the plural "children" was inappropriate, but we are unable

16

to say that this brief reference subjected Maxwell to the grave peril required for a mistrial, nor did it deny Maxwell a fair trial as is required to establish fundamental error. See Munford v. State, 923 N.E.2d 11, 13 (Ind. Ct. App. 2010) ("To rise to the level of fundamental error, the error must be so prejudicial to the rights of the defendant as to make a fair trial impossible.").

Maxwell further claims that the prosecutor engaged in misconduct by suggesting to the jury that there was evidence of his guilt beyond that which was presented in court. Maxwell claims that the first instance of this misconduct occurred during the State's closing argument, during which the prosecutor told the jury that it could not properly convict Maxwell of Count II of the charging information which referred to anal penetration. Specifically, the prosecutor stated:

> The other easy thing on the charging information in Count 2, there's no anal penetration. So, come back with a not guilty on that because that's the fair thing to do. When R.H. testified today, she wasn't able to tell you about that. That's okay, she wasn't. . . . Don't give me a verdict on Count 2, forget that.
>
> * * *
>
> And [R.H.] took an oath and that's the evidence that you're relying on. That's why you can't convict him on the anal penetration because [R.H.] didn't testify about that.

Tr. pp. 429, 459. Maxwell now claims that this somehow suggested to the jury that Maxwell had penetrated R.H.'s anus with his fingers, but that R.H. simply had not testified to that fact. We strongly disagree.

First, we note yet again that Maxwell did not object, request an admonishment, or move for a mistrial after this statement, and this claim is waived. See Adcock, 933 N.E.2d at 26. Moreover, the jury was already aware of the charge in Count II, which

17

alleged anal penetration. The prosecutor was simply admitting to the jury that the State had failed to present any evidence to support his charge. Indeed, the prosecutor reminded the jury that R.H. was under oath and that, based on her testimony, the jury could *not* properly return a verdict of guilty on Count II. We are at a loss as to how this subjected Maxwell to any grave peril.

Maxwell also claims that the prosecutor improperly referred to a prior statement that R.H. made to a forensic child examiner. In the State's closing argument, the prosecutor said:

> Jill Carr is the forensic interviewer. You didn't get to see the interview. You didn't because you got to see R.H. and the law doesn't allow you to have both. The Judge determined that if R.H. would become unavailable, that that video would have been admissible and you could have seen it. But R.H. did fine.

Tr. p. 431. Maxwell now claims that this statement suggested to the jury that the State's case would have been stronger had the jury been allowed to see Ms. Carr's interview of R.H. and that R.H. made "consistent or additional accusations in it." Appellant's Br. p. 22.

Maxwell yet again failed to preserve this issue by objecting to the prosecutor's allegedly improper statement, requesting an admonishment, or moving for a mistrial. See Adcock, 933 N.E.2d at 26. Moreover, we fail to see how merely mentioning the fact that R.H. had been interviewed by Ms. Carr suggests that R.H. made additional accusations. The prosecutor simply commented on the fact that R.H. "did fine" as a witness. This statement did not constitute misconduct or fundamental error.

18

Maxwell also complains that the prosecutor made several references to medical evidence during the State's closing argument when, Maxwell claims, there was no medical evidence of molestation. Once again, Maxwell failed to object, request an admonishment, or move for a mistrial based on these allegedly improper statements, and the issue is therefore waived. See Adcock, 933 N.E.2d at 26. Nor can we say that the prosecutor's statements amounted to fundamental error. Although there was no medical evidence that R.H. had any physical trauma as a result of Maxwell's molestation, the medical evidence also indicated that physical trauma is present in only five to six percent of child molestation victims. In addition, there was evidence that R.H. had a history of vaginal discharge that was diagnosed as being the result of yeast infections. But there was medical testimony that the most likely cause of vaginal discharge in pre-pubescent girls was "non-specific vaginitis," which can be caused by irritants, including bubble bath or "inadequate wiping after going to the bathroom." Tr. p. 144. The medical expert witness also agreed that "an adult male hand rubbing the vaginal area" was also an irritant that could cause such vaginitis. Id. at 145. Thus, even though the medical evidence of molestation was tenuous, it was not non-existent. We therefore cannot say that the prosecutor's comments amounted to fundamental error.

Maxwell next complains of the following statement made by the prosecutor during the State's closing argument:

> [A nurse practitioner at Riley Hospital] said if the Defendant had touched R.H.'s hymen, it's very sensitive in a pre-pubertal girl, they come off the table screaming and the exam is over. Did R.H. say it hurt? No, because he didn't get into the hymen. He did penetrate. He penetrated the labia majora, he penetrated the labia minora, he didn't penetrate the hymen. We

19

have several layers as girls *and you have . . . to get past all of them to win the prize.* He didn't get past all of them. He didn't hurt her. If she was making up a story, which is his defense, this is all made up, why didn't she make up a story where she got hurt? Wouldn't that make more sense?

Tr. p. 427 (emphasis added).

Maxwell now claims that the emphasized portion of prosecutor's statement was "crude" and had no basis in the evidence. Once again, Maxwell's argument is waived for failure to object, request an admonishment, or move for a mistrial. Moreover, even if crude, the comment was supported by the evidence in that there was testimony that Maxwell penetrated R.H.'s labia with his fingers, but did not penetrate or damage her hymen. We cannot say that the prosecutor's statement constituted fundamental error.

Maxwell's next claim of prosecutorial misconduct involves the prosecutor's mention of the notorious serial killer Ted Bundy during the State's closing argument. Specifically, the prosecutor stated:

> [Mother] trusted [R.H.] with her children. Just like those women trusted Ted Bundy. He seemed like a nice guy. They got in the cars and nobody ever saw them again. Someone's outward appearance – their appearance of being a warm, trusting, person is no guarantee that that's what they actually are on the inside.

Tr. pp. 424-45. Maxwell claims that comparing him to a serial killer was little more than an attempt to inflame the jury's passions and prejudices. Yet again, Maxwell waived this issue by failing to object, request an admonishment, or move for a mistrial. See Adcock, 933 N.E.2d at 26.

Still, we certainly do not condone the prosecutor's reference to a notorious serial killer. But the prosecutor's comment, however ill-advised, was simply trying to explain

why Mother allowed Maxwell to watch her children and that outwardly pleasant people can commit horrific crimes. Simply put, we do think the prosecutor's isolated comment amounted to fundamental error.

Maxwell's last claim of prosecutorial misconduct is that the State violated local discovery rules by failing to provide the defense with Detective Looper's notes regarding what Maxwell said during his recorded jail telephone calls. On appeal, the State acknowledges that it was "unfortunate" that Detective Looper's notes were not disclosed until trial. But the State argues that this late disclosure did not constitute misconduct. We agree.

Maxwell was made aware during discovery that the State planned to use the telephone calls as evidence. In a pre-trial conference memorandum dated November 4, 2009, the prosecutor acknowledged that the jail telephone calls had yet to be provided to the defense. But this also means that the defense was aware that evidence of the phone calls existed. Yet, despite the State's failure to provide Maxwell with this evidence, he did not ask for the trial court's assistance to compel the State to provide any evidence of the calls to him. The trial court also recessed the trial so that Maxwell's counsel could speak with Detective Looper about the calls. More importantly, Maxwell was a party to the telephone calls and was himself aware of what he stated while he was in jail. It cannot be said that Maxwell was unfairly surprised by the content of his own statements. Indeed, Maxwell testified at trial regarding the telephone calls and attempted to explain his statements to his wife. We therefore cannot conclude that the prosecutor committed misconduct in this regard.

21

## V. Jail Telephone Calls

Maxwell also makes a separate claim that the trial court abused its discretion in permitting Detective Looper to testify regarding the content of the telephone calls Maxwell made while he was in jail. The admission of evidence is within the sound discretion of the trial court, and we review the court's decision only for an abuse of that discretion. Rogers, 897 N.E.2d at 959. A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. Id.

Maxwell claims that the trial court erred in permitting Detective Looper to testify regarding the content of the jail calls because they were "out of context" and because Detective Looper had no independent memory of the content of the calls. Appellant's Br. p. 28. Thus, Maxwell argues, "[n]o proper grounds existed for the admission of Looper's testimony in this unique circumstance." Id. We disagree.

Detective Looper testified regarding Maxwell's out-of-court statements. The out-of-court statement of a party is by operation of rule not hearsay. See Ind. Evidence Rule 801(d)(2)(A) (a statement is not hearsay if the statement is offered against a party and is the party's own statement); Dorsey v. State, 802 N.E.2d 991, 995 (Ind. Ct. App. 2004) (concluding that trial court did not err in admitting into evidence a jailhouse telephone conversation under Evidence Rule 801(d)(2)).

Moreover, the State established at trial that Detective Looper's testimony regarding the telephone calls was admissible pursuant to Indiana Evidence Rule 803(5), which provides:

22

(5) **Recorded Recollection.**  A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly.  If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Maxwell, without citation or further elaboration, claims that this provision was inapplicable because "the recorded recollections were Looper's notes.  Within Looper's notes were his 'shorthand' of Maxwell's statements."  Appellant's Br. p. 28.

Detective Looper's notes, whether shorthand or not, concerned a matter about which he once had knowledge, but which by the time of trial, he had insufficient recollection to enable him to testify fully and accurately.  Moreover, when made, the matter was fresh in his memory.  We therefore conclude that the trial court did not abuse its discretion in admitting Detective Looper's testimony pursuant to Evidence Rule 803(5).  See United States v. Cash, 394 F.3d 560, 564 (7th Cir. 2005) (holding that testimony read from "report of contact form" filled out by federal employee was admissible under Federal Rule of Evidence 803(5), which is substantially similar to Indiana Evidence Rule 803(5), where the employee testified that the defendant made statements to her during their telephone conversation, that she could not remember the statements verbatim, and that she recorded defendant's words during the course of the conversation); see also Impson v. State, 721 N.E.2d 1275, 1282-83 (Ind. Ct. App. 2000) (holding that affidavit describing incident of domestic battery could be read into evidence under Evidence Rule 803(5) where it was signed by the victim shortly after the incident and where the victim denied having any specific memory of the battery at trial).

Maxwell also complains that Detective Looper's testimony placed his statements out of context, citing Indiana Evidence Rule 106. This rule provides, "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require at that time the introduction of any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously with it." Evid. R. 106. As the State notes, Detective Looper based his testimony on his notes, but no written or recorded statement of the calls was itself admitted into evidence. Accordingly, Evidence Rule 601 is inapplicable.

We again note that Maxwell testified at his own trial, and he gave his version of what he said in the recorded telephone calls. He was thus able to put his statements in the phone calls into context. That the jury did not believe him does not make the evidence inadmissible. In short, the trial court did not abuse its discretion in admitting Detective Looper's testimony regarding the content of Maxwell's jail telephone calls.

## VI. Jury Instruction

Maxwell next claims that the trial court committed fundamental error in instructing the jury with regard to the requirement of jury unanimity. The manner of instructing a jury is left to the sound discretion of the trial court. Rogers, 897 N.E.2d at 962. We will not reverse the trial court's ruling unless the instructional error is such that the charge to the jury misstates the law or otherwise misleads the jury. Id. Jury instructions must be considered as a whole and in reference to each other, and even an erroneous instruction will not constitute reversible error if the instructions, taken as a whole, do not misstate the law or otherwise mislead the jury. Id.

24

Maxwell neither objected to the trial court's unanimity instruction nor offered an instruction of his own. The issue is therefore waived. See Baker v. State, 948 N.E.2d 1169, 1178 (Ind. 2011) (noting that a defendant who fails to object to an instruction at trial waives any challenge to that instruction on appeal and that the failure to tender an instruction likewise results in waiver of any claim of instructional error on appeal), reh'g denied. Maxwell attempts to avoid waiver by claiming that the trial court's instruction constituted fundamental error. The fundamental error doctrine provides a vehicle for the review of error not properly preserved for appeal. Baker, 948 N.E.2d at 1178. But in order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. Id. The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. Id. In considering whether a claimed error denied the defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial. Id. at 1178-79. Harm is not shown by the fact that the defendant was ultimately convicted; instead, harm is determined by whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. Id. at 1179.

Maxwell notes that Counts III and IV alleged two acts of child molestation by fondling or touching both using identical wording. See Appellant's App. p. 26. He also notes that R.H. testified as to multiple instances of such molestation over an extended period of time. He therefore claims that each guilty verdict on these counts may not have been unanimous with regard to which instance of abuse supported each verdict.

25

Maxwell argues that the trial court erred by giving only a general unanimity instruction, which stated in relevant part:

> To return a verdict, each of you must agree to it. Each of you must decide the case for yourself, but only after considering the evidence with the other jurors. It is your duty to consult each other. You should try to agree on a verdict, if you can do so without compromising your individual judgment. Do not hesitate to re-examine your own views and change your mind if you believe you are wrong. But do not give up your honest belief just because the other jurors may disagree, or just to end deliberations.

Appellant's App. p. 146. Maxwell now argues that the jury should have been instructed that it had to unanimously agree as to which particular act supported which count alleged in the information.

This very issue was recently addressed by our supreme court in <u>Baker</u>, <u>supra</u>. In that case, the defendant complained that although he was charged with one count of child molesting with respect to each of his three victims, the jury heard evidence of multiple acts of molestation concerning each alleged victim. He therefore claimed that some jurors might have relied on different evidence than other jurors to convict him on all three counts. On appeal, our supreme court adopted the approach taken by the California Supreme Court, holding:

> [T]he State may in its discretion designate a specific act (or acts) on which it relies to prove a particular charge. However if the State decides not to so designate, then the jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged.

948 N.E.2d at 1177 (citing <u>People v. Jones</u>, 792 P.2d 643, 658-59 (1990)).

26

In Baker, as here, the jury was not instructed that they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim. But, as here, the defendant did not object to the trial court's unanimity instruction or tender his own instruction. The Baker court therefore had to decide whether the instructional error was fundamental. In addressing that question, the court noted that the only issue at trial was the credibility of the victims. Id. at 1179. And the only defense was to undermine the victims' credibility. Because the jury resolved the basic credibility dispute against Baker, it would have convicted him of any of the various offenses shown by the evidence to have been committed. Id. The court therefore concluded that Baker had not demonstrated that the instructional error in his case so prejudiced him that he was denied a fair trial. Id.

We think the same is true here. The main issue for the jury to resolve was whether R.H. was telling the truth with regard to Maxwell's acts of molestation. If the jury believed her, it could have convicted him of any of the offenses shown by the evidence to have been committed. As did the court in Baker, we conclude that Maxwell has failed to demonstrate that the instructional error constituted fundamental error.

### VII.   Double Jeopardy

In a similar vein, Maxwell claims that his convictions for both counts of Class C felony child molesting constitute double jeopardy because there was a reasonable possibility that actual evidence used to convict him of one count was used to convict him of the other count. Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense."

27

The standard for evaluating an alleged double jeopardy violation is well-settled. In Richardson v. State, 717 N.E.2d 32, 49 (Ind. 1999), our supreme court established a two-part test for analyzing double jeopardy claims under the Indiana Constitution and concluded that two or more offenses are the "same offense" for double jeopardy purposes "if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." Thus, a double jeopardy violation may occur if the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts. Williams v. State, 892 N.E.2d 666, 668–69 (Ind. Ct. App. 2008). To establish a violation of the "actual evidence" test, the defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. Id.

Here, Maxwell claims that there is a reasonable possibility that the jury used the same evidentiary facts to convict him of both counts of Class C felony child molesting. Maxwell admits that R.H. testified that "inappropriate touching" occurred in three separate locations at different times, but claims that no clear distinction was made for the jury "as to which count encompassed which incident." Appellant's App. pp. 33-34. Maxwell emphasizes that at one point during deliberations, the jury asked the trial court if it could clarify the differences between Counts III and IV, which as noted above, were identically worded.

The State alleged that Maxwell committed three separate acts of child molestation, and the State presented evidence of three acts of molestation: two that occurred at R.H.'s home and one that occurred at Maxwell's house. And although Maxwell claims that the State did not distinguish between the two counts of Class C felony child molestation in its closing arguments, we disagree. With regard to Counts III and IV, the prosecutor stated that these counts "are fondlings. R.H. told you *every time* he babysat he touched her. Find him guilty on the . . . two C felony fondlings." Tr. p. 429 (emphasis added). The State presented evidence of multiple acts of fondling and emphasized the repeated acts of molestation to the jury. Under these facts and circumstances, we conclude that Maxwell has not demonstrated a reasonable possibility that the jury used the same evidentiary facts to convict him of both counts of Class C felony child molesting.

## VIII. Sentencing

The trial court sentenced Maxwell to four years on each of the two Class C felony convictions, to be served concurrently with a forty-year sentence imposed on the Class A conviction. Maxwell claims that his aggregate forty-year sentence is inappropriate in light of the nature of his offenses and his character.

Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we have the power to review and revise sentences, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of

the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). It is on the basis of Appellate Rule 7(B) alone that a criminal defendant may now challenge his sentence "where the trial court has entered a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence that is supported by the record, and the reasons are not improper as a matter of law, but has imposed a sentence with which the defendant takes issue." Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007). It is the defendant's burden on appeal to persuade the reviewing court that the sentence imposed by the trial court is inappropriate. Id. at 494.

The advisory sentence for a Class A felony is thirty years, and the maximum sentence is fifty years. Ind. Code § 35-50-2-4 (2004). Thus, Maxwell's sentence lies between the advisory and maximum sentence. And the trial court imposed the advisory four-year sentence on Maxwell's Class C felony convictions, which is half the maximum sentence of eight years. See Ind. Code § 35-50-2-6 (2004). The maximum possible sentence Maxwell faced was sixty-six years, had the trial court ordered the sentences to be served consecutively. Instead, the trial court sentenced Maxwell to a total of forty years.

The nature of Maxwell's offenses reveals that Maxwell was a family member entrusted to take care of R.H. and her siblings. Maxwell violated this trust by repeatedly molesting R.H. He then instructed R.H. not to tell anyone of his actions, and R.H. was afraid she would get in trouble if she did tell. Although this is not among the worst possible scenarios for a Class A felony child molesting conviction, Maxwell's violation

30

of a position of trust justifies a sentence above the advisory. See Horton v. State, 949 N.E.2d 346, 348 (Ind. 2011) (concluding that defendant's sentence should be greater than the advisory where he abused a position of trust). Maxwell's character also justifies the trial court's sentence. The trial court found that Maxwell had a criminal history that included prior misdemeanor convictions for domestic battery and harassment. Although this criminal history relatively minor, it does reveal that Maxwell has not led an entirely law-abiding life. The nature of Maxwell's offenses and his character might not justify a maximum sentence, but we are unable to say that the trial court's decision to sentence Maxwell to an aggregate term of forty years is inappropriate.

**Conclusion**

The trial court did not abuse its discretion in denying Maxwell's motions for a mistrial, nor did the trial court abuse its discretion in permitting the State to call R.H.'s young sister as a witness, even though the child was ultimately unable to testify. The trial court did not abuse its discretion in propounding to the witnesses various questions posed by the jury. Maxwell also failed to establish any reversible error in the conduct of the prosecutor. Further, the trial court did not abuse its discretion in permitting Detective Looper to testify regarding the content of telephone calls Maxwell made while in jail. The trial court's did not commit fundamental error in instructing the jury with regard to unanimity, and Maxwell's two convictions for Class C felony child molesting do not constitute double jeopardy. Lastly, Maxwell's forty-year sentence is not inappropriate in

31

light of the nature of the offense and the character of the offender.

Affirmed.

BAILEY, J., and CRONE, J., concur.