**Brian S. ADCOCK, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 47A01–0912–CR–591.

Court of Appeals of Indiana.

Aug. 27, 2010.

Transfer Denied Oct. 20, 2010.

Mark Small, Indianapolis, IN, Lafayette, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Brian S. Adcock appeals his convictions for two counts of Child Molesting,[1] a class A felony, two counts of Sexual Misconduct with a Minor,[2] a class B felony, and the finding that he was a Repeat Sexual Offender (RSO).[3] Specifically, Adcock argues that his convictions must be set aside because the trial court improperly permitted the prosecutor to analogize the standard of proof to a jigsaw puzzle during voir dire, that the trial court erred in allowing the State to amend its notice to have Adcock sentenced as an RSO, and that his convictions for both child molesting and sexual misconduct with a minor violated the prohibitions against double jeopardy.

Concluding that the trial court did not err in permitting the prosecutor to present the jigsaw puzzle analogy during voir dire and finding no other error, we affirm the judgment of the trial court.

---

1. Ind.Code § 35–42–4–3.

2. I.C. § 35–42–4–9.

3. Ind.Code § 35–50–2–14.

## FACTS

L.P., her mother, and Adcock were living together in Bedford with L.P.'s brothers. Adcock and L.P.'s mother married when L.P. was twelve years old.

L.P. was born on September 21, 1988, and when she was a third grade student, Adcock would enter her bedroom in the morning approximately once a week and fondle her breasts. Adcock also touched L.P.'s "private area" on top of her clothes and would attempt to touch L.P. under her clothes. Tr. p. 440. However, L.P. would roll around and prevent him from doing so.

When L.P. was a junior high school student, Adcock would rub L.P.'s back and "kind of go on [her] breasts." Id. at 441–42. Adcock would also fondle L.P.'s breasts "under her clothes" and touch L.P.'s "private area." Id. at 442–44. Adcock typically wore a bathrobe when he entered L.P.'s bedroom and was naked underneath the robe. At some point, L.P. told her friend, J.B., about the fondling incidents. J.B. would occasionally spend the night with L.P. and witnessed Adcock walk into the room and touch L.P.'s breasts. Adcock would also enter L.P.'s bedroom when her friend, H.F., slept over at the house. Adcock typically entered the bedroom around 3:00 a.m., stood over L.P.'s bed, and masturbated. On occasion, Adcock would reach over H.F. and grab L.P.'s breasts.

During L.P.'s high school years, Adcock would rub his penis against L.P.'s vagina for "about half an hour" while L.P. lay on the floor of her bedroom. Id. at 446–48. These incidents happened "a lot" and Adcock refused to stop even though L.P.

requested him to do so. Id. When L.P. was in her junior year of high school, Adcock would "[go] towards [her] private area and butt" during back rubs and would fondle L.P.'s vagina with his hand underneath her clothing. Id. at 445–46. Adcock also placed his finger in L.P.'s vagina and "massaged" it. Id. at 453–54. Although Adcock directed L.P. to "rub his penis," she refused. Id. at 454. These incidents occurred approximately twice a week.

On May 21, 2008, the State charged Adcock with the following offenses:

> Counts I, II, and III, Child Molesting, a class A felony;
>
> Counts IV, V, and VI, Sexual Misconduct with a Minor, a class B felony;
>
> Count VII, Vicarious Sexual Gratification, a class D felony;
>
> Counts VIII, XI, Child Molesting, a class C felony;
>
> Count IX, Sexual Misconduct with a minor, a class D felony,
>
> Count X, Attempted Child Molesting, a class A felony.

Appellant's App. p. 10–11.[4] The child molesting and sexual misconduct with a minor allegations in counts VIII and IX pertained to Adcock's offenses against L.P.'s friend, H.F. And counts X and XI pertained to offenses that Adcock committed against J.B. The State also filed a Notice of Intent (Notice) to prove that Adcock was an RSO.

On May 23, 2008, Adcock filed a motion for severance of the counts. The trial court granted the motion and counts VIII and IX were removed. The State subsequently moved to dismiss count VII, which

4. The State alleged that Adcock committed the offenses in counts I–III between August 2001, and August 2002, counts IV–VI between September 21, 2002 and September 20, 2004, count VII between 1997 and September 20, 2002, Count VIII between August 2001 and July 14, 2002, Count IX between July 15, 2002, and July 14, 2004, count X between November 16, 2001, and November 14, 2002, and count XI between November 16, 2001, and November 14, 2002.

the trial court granted. As a result, the State filed an amended charging information and the case was set to proceed to trial on Counts I–III, child molesting, a class A felony, and Counts IV–VI, sexual misconduct with a minor, a class B felony, with L.P. listed as the victim of those offenses.[5]

However, on February 2, 2009, the State filed a third amended information to correct a typographical error regarding L.P.'s age in Counts I–III. More specifically, the third amendment alleged that L.P. was "age 13" at the time of the offense, whereas the prior amendment alleged that L.P. was "age 12" at the time. Appellant's App. p. 41–42, 65–66. Adcock did not object to the State's motion to amend.

Jury selection commenced on September 1, 2009, and Adcock's trial began the following day. During voir dire, the prosecutor analogized the case to a twenty-piece jigsaw puzzle that was missing two pieces to highlight the difference between "beyond a reasonable doubt and beyond all possible doubt." Tr. p. 277, 285. More specifically, the prosecutor asked one potential juror: "I put the jigsaw puzzle together and it's missing a few pieces, two (2) pieces. . . . [W]ithin my jigsaw puzzle you can still see what the picture is supposed to be, is that the same as beyond a reasonable doubt or is that beyond all possible doubt?" Id. at 277. The prosecutor posed additional questions and explained that the purpose of the jigsaw puzzle analogy was that "if you have the whole puzzle that would be proof beyond all possible doubt because you could see the whole picture. I just wanted to make sure that you weren't going to hold me to

that higher burden." Id. at 361. Although Adcock objected to the prosecutor's comments and this line of questioning, he did not request an admonishment or move for a mistrial. The trial court overruled Adcock's objection to the prosecutor's comments and questions.

Adcock also questioned the potential jurors and emphasized that the trial judge would instruct as to the proper definition of the reasonable doubt standard and that the trial judge's definition was the proper one for the jurors to follow. Adcock questioned the jurors as to whether they would follow the trial judge's instruction over the jigsaw puzzle analogy.

At some point, Adcock moved for a directed verdict on Count II, child molesting, and Count V, sexual misconduct with a minor, which the trial court granted. Adcock was found guilty on all remaining counts. Thereafter, a jury trial commenced on the RSO count. However, after opening arguments, the State moved to amend the Notice to show that Adcock had previously been convicted of child molesting in May 1986. The Notice originally stated that Adcock's previous conviction had occurred in 1990 from an offense that was committed in 1984. However, it was determined that the 1990 date represented a modification of Adcock's conviction.

Although the trial court acknowledged that the amendment was not requested merely because of a typographical error regarding the conviction date, it granted the State's motion over Adcock's objection. The trial court reasoned that Adcock was not prejudiced by the amendment because the abstract of judgment set forth the cause number, the name of the defendant,

---

5. The State's second and amended charging information alleged that Adcock committed the acts listed in counts I–III between August 2001, and August 2002. The acts set forth in Counts IV–VI were allegedly committed be-

tween May 21, 2003, and September 20, 2004, and the act alleged in Count VII was committed between 1997 and September 20, 2002. Appellant's App. p. 41–42.

the date that the prior offense was committed, and the date of sentencing. Thereafter, the jury determined that Adcock was an RSO.

On October 2, 2009, the trial court entered a judgment of conviction on Counts I, III, IV, and VI, and sentenced Adcock to concurrent terms of fifty years on Counts I and III and to concurrent terms of twenty years for Counts IV and VI. The trial court also ordered the sentences imposed on Counts I and III to run consecutively to the sentences on Counts IV and VI, and added a ten-year enhancement as a result of Adcock's RSO status. Thus, Adcock received an aggregate sentence eighty years, and he now appeals.

## DISCUSSION AND DECISION

### I. Prosecutor's Questions and Comments During Voir Dire

Adcock first argues that his convictions must be reversed because the trial court erred in allowing the prosecutor to analogize the concept of "reasonable doubt being like a jigsaw puzzle with pieces missing" during voir dire. Appellant's Br. p. 7. Adcock asserts that the prosecutor's comments and questions were prejudicial and violated his due process rights and his right to a fair trial under both the federal and state constitutions.

A trial court has broad discretionary power to regulate the form and substance of voir dire. *Ward v. State,* 903 N.E.2d 946, 955 (Ind.2009). Proper examination during voir dire may include questions designed to disclose the jurors' attitudes towards the offense charged and to uncover preconceived ideas about defenses that the defendant intends to use. *Steelman v. State,* 602 N.E.2d 152, 158 (Ind.Ct. App.1992). In making these determinations, the parties may pose hypothetical questions, provided they do not suggest prejudicial evidence not adduced at trial. *Id.*

In this case, we note that Adcock has presented his claim under the guise of prosecutorial misconduct. When reviewing such claims, we must determine: (1) whether there was misconduct by the prosecutor; and (2) whether that misconduct, under the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Wisehart v. State,* 693 N.E.2d 23, 57 (Ind.1998). The gravity of the peril is measured by the probable persuasive effect of the misconduct on the jury's decision. *Booher v. State,* 773 N.E.2d 814, 817 (Ind.2002). We afford substantial deference to the trial court's decision because it is in the best position to gauge the circumstances and the probable impact on the jury. *Schlomer v. State,* 580 N.E.2d 950, 955 (Ind.1991). This inquiry depends upon an analysis of the probable persuasive effect that any misconduct had on the jury's decision, and whether the alleged misconduct was repeated such that it appears that the prosecutor engaged in a deliberate attempt to improperly prejudice the defendant. *Watkins v. State,* 766 N.E.2d 18, 26 (Ind.Ct. App.2002).

We observe that Adcock did not request an admonishment or move for a mistrial following the prosecutor's comments and questions. Thus, the issue is waived. *See Peterson v. State,* 699 N.E.2d 701, 704 (Ind.Ct.App.1998) (holding that the failure to request an admonishment or move for a mistrial following alleged prosecutorial misconduct results in waiver). However, in an effort to avoid waiver, Adcock claims that the prosecutor's comments and questions to the jurors amounted to fundamental error. For prosecutorial misconduct to constitute fundamental error, the misconduct must con-

stitute a clearly blatant violation of basic and elementary principles of due process, present an undeniable and substantial potential for harm, and make a fair trial impossible. *Lainhart v. State,* 916 N.E.2d 924, 931–32 (Ind.Ct.App.2009). Moreover, the prosecutorial misconduct must have subjected the defendant to grave peril and had a probable persuasive effect on the jury's decision. *Id.*

The United States Supreme Court has declared that when considering claims of prosecutorial misconduct, the relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 180–83, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). To determine prejudice under *Darden,* various courts have examined the following factors: (1) whether the prosecutor misstated the evidence; (2) whether the remarks implicate specific rights of the accused; (3) whether the defense invited the response; (4) the trial court's instructions; (5) the weight of the evidence against the defendant; and (6) the defendant's opportunity to rebut. *Bartlett v. Battaglia,* 453 F.3d 796, 802 (7th Cir.2006).

As discussed above, the prosecutor's analogy to a jigsaw puzzle missing two pieces was used to highlight the difference between "beyond a reasonable doubt" and "beyond all possible doubt." Tr. p. 227, 285. The prosecutor explained the purpose of the analogy was that "if you have the whole puzzle that would be proof beyond all possible doubt because you could see the whole picture. I just wanted to make sure that you weren't going to hold me to that higher burden." *Id.* at 361. Indeed, it is apparent that the prosecutor was discussing a legal standard rather than specific evidence. Thus, contrary to

Adcock's contentions, there was no misstatement of the evidence.

Also, even assuming for argument's sake that the prosecutor's comments and questions to the jurors amounted to misconduct, Adcock also directs us to several cases from other jurisdictions that have condemned a prosecutor's analogy similar to the one that was presented here. For instance, in *People v. Katzenberger,* 178 Cal.App.4th 1260, 101 Cal.Rptr.3d 122, 125 (2009), the prosecutor used a Power Point presentation during closing argument where six different puzzle pieces came onto the screen in sequence. The picture was immediately and easily recognizable as the Statue of Liberty, even though two pieces of the puzzle were missing. On appeal, it was determined that the prosecutor had engaged in misconduct because the

> presentation, with the prosecutor's accompanying argument, leaves the distinct impression that the reasonable doubt standard may be met by a few pieces of evidence. It invites the jury to guess or jump to a conclusion, a process completely at odds with the jury's serious task of assessing whether the prosecution has submitted proof beyond a reasonable doubt.

101 Cal.Rptr.3d at 127. However, the defendant's conviction was affirmed and it was determined that the prosecutor's conduct "was not prejudicial, even under a standard of beyond a reasonable doubt," because "the [trial] court proceeded to instruct the jury with the correct definition of reasonable doubt." *Id.* at 128.

And in *Lord v. State,* 107 Nev. 28, 806 P.2d 548, 552 (1991), the prosecutor was held to have "improperly quantified the concept of reasonable doubt during closing argument by suggesting that having 90–95% of the pieces of a puzzle suffices to convict beyond a reasonable doubt." 107

Nev. at 35, 806 P.2d at 552. However, reversal was not warranted because the jury was instructed as to the proper definition of reasonable doubt.

Finally, in *People v. Wilds*, 141 A.D.2d 395, 529 N.Y.S.2d 325, 327 (1988), the trial court used the analogy of a jigsaw puzzle of Abraham Lincoln, stating that if the prosecution "makes out its case beyond a reasonable doubt even though some questions are unanswered, even though there [are] some blank spaces in the jigsaw puzzle you will say so you are convinced beyond a reasonable doubt that this is a [portrait] of Abraham Lincoln." *Id.* In reversing the defendant's conviction, the *Wilds* court determined that "the average American juror would recognize a jigsaw puzzle of Abraham Lincoln, long before all of the pieces are in place. Obviously, this is not the quantum of proof required in a criminal case." *Id.*, 529 N.Y.S.2d at 327.

Unlike the circumstances in these cases, the record demonstrates that Adcock also questioned the jurors on voir dire and emphasized that the jury should follow the trial court's definition of reasonable doubt. Tr. p. 291–92. Thus, Adcock was afforded the opportunity to rebut the prosecutor's analogy and the trial court provided the jury with a detailed instruction that contained the correct definition of reasonable doubt and the State's burden of proof. Tr. p. 389, 617–18. More specifically, the trial court read the following instruction to the jury directly following voir dire *and* after the parties' closing arguments just prior to deliberations:

A reasonable doubt is a fair, actual and logical doubt based upon reason and common sense. A reasonable doubt may arise either form the evidence or from a lack of evidence. Reasonable doubt exists when you are not firmly convinced of the Defendant's guilt, after you have weighed and considered all the evidence. A Defendant must not be convicted on suspicion or speculation. It is not enough for the State to show that the Defendant is probably guilty.... The proof must be so convincing that you can rely and act upon it in this matter of the highest importance.

Tr. p. 388–89.

When considering the statements and questions as a whole that the prosecutor posed during voir dire, we cannot say that Adcock was unduly prejudiced by the jigsaw puzzle analogy or that fundamental error resulted. Moreover, in light of the opportunity that Adcock was afforded to rebut the prosecutor's comments and the instructions that were given, we conclude that Adcock has failed to show that his due process rights and his right to a fair trial were violated. Thus, we decline to reverse Adcock's convictions on this basis.[6]

## II. Amended RSO Notice

 Adcock next argues that the trial court erred in permitting the State to amend the RSO Notice. Specifically, Adcock claims that the amendment establishing the date of a prior conviction for a sex offense was one of "substance" and not merely "of form." Thus, Adcock contends that the amendment unfairly prejudiced him. Appellant's Br. p. 23–24.

---

**6.** Although we do not reverse and decline to find that the prosecutor's comments amounted to misconduct in this instance, we nonetheless caution prosecutors who are tempted to enliven voir dire and/or opening and closing arguments with visual aids or analogies such as the one here, that using such aids to illustrate the "beyond a reasonable doubt" standard is dangerous and unwise. Moreover, at least one court has acknowledged that "experiments," including mere graphs, lines, charts, or Power Point presentations, may imperil a prosecutor's attempt to establish the concept of guilt beyond a reasonable doubt. *Katzenberger*, 101 Cal.Rptr.3d at 129.

We initially observe that Indiana Code section 35–50–2–14(b) provides that "[t]he state may seek to have a person sentenced as a repeat sexual offender for a sex offense ... by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated one (1) prior unrelated felony conviction for a sex offense." A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charges. This means that the "defendant must be afforded a reasonable opportunity to prepare for and defend against [an] amended charge." *Baker v. State*, 922 N.E.2d 723, 729 (Ind.Ct.App.2010).

With regard to an amendment of the charges, Indiana Code section 35–34–1–5 provides that

(a) An indictment or information which charges the commission of an offense may not be dismissed but may be amended on motion by the prosecuting attorney at any time because of any immaterial defect, including:

(1) any miswriting, misspelling, or grammatical error;

. . .

(7) the failure to state the time or place at which the offense was committed where the time or place is not of the essence of the offense; [or]

. . .

(9) any other defect which does not prejudice the substantial rights of the defendant.

(b) The indictment or information may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time:

(1) up to:

(A) thirty (30) days if the defendant is charged with a felony; or

(B) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors; before the omnibus date; or

(2) before the commencement of trial; if the amendment does not prejudice the substantial rights of the defendant. When the information or indictment is amended, it shall be signed by the prosecuting attorney or a deputy prosecuting attorney.

(c) Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant.

(d) Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. Upon permitting such amendment, the court shall, upon motion by the defendant, order any continuance of the proceedings which may be necessary to accord the defendant adequate opportunity to prepare his defense.

In construing this statute, our Supreme Court determined that an amendment is not one of substance if "(a) defense under the original information would be equally available after the amendment, and (b) the accused's evidence would apply equally to the information in either form." *Fajardo v. State*, 859 N.E.2d 1201, 1207 (Ind.2007).[7]

7. As an aside, we note that in apparent response to *Fajardo*, the General Assembly enacted the above-quoted provisions of Indiana Code section 35–34–1–5(c), which became effective on May 8, 2007, to permit amendments of substance at any time "before, dur-

In this case, the State initially filed a Notice that included December 18, 1990, as the date of Adcock's prior conviction for child molesting. That date actually represented the date of an amended abstract of judgment and the State sought to amend the Notice to include the actual conviction date of May 16, 1986. Tr. p. 636–37. Following a hearing on the State's motion to amend the RSO count, the trial court observed that the abstract of judgment that the State submitted contained the date the crime was allegedly committed, the cause number, and the name of the defendant. *Id.* at 642–43. Moreover, the trial court found that "[a]t the top of the abstract of judgment it says date of sentencing May 16, 1986, it is clearly on the abstract." *Id.* at 643.

Although Adcock asserts that he was going to make a "technical" objection to the State's original Notice, which was no longer available under the corrected Notice, the trial court found that the information included in the Notice and abstract of judgment permitted Adcock to identify the relevant prior offense and place Adcock on sufficient notice of the proposed enhancement. Tr. p. 643. Thus, because Adcock was afforded with proper notice and information before the amendment, it follows that defenses relating to Adcock's RSO status were equally available before and after that amendment.

Even more compelling, it is apparent that the amendment did not change the material elements relevant to the RSO determination, i.e., that Adcock had been convicted of a prior sex offense. Even with the incorrect conviction date, the Notice fulfilled its purpose in informing Adcock of the State's intent to seek sentencing as an RSO. Therefore, Adcock has

failed to show that the immaterial defect in the original Notice resulted in substantial prejudice to him. As a result, we agree with the trial court's determination that the original Notice provided Adcock with sufficient information of the State's intent to permit him to prepare and defend against the charge, and we conclude that the trial court did not err in allowing the State to amend the Notice.

### III. Double Jeopardy

Finally, Adcock maintains that his convictions on Counts I, III, IV, and VI violated double jeopardy principles. Specifically, Adcock argues that he was improperly convicted of both child molesting and sexual misconduct with a minor.

Both the federal and State constitutions contain prohibitions against double jeopardy. U.S. Const. amend. V; Ind. Const. art. I, § 14. Two or more offenses are the "same offense" in accordance with State double jeopardy purposes where, with respect to either the statutory elements of the challenged offense or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999). The statutory elements test and the actual evidence test are both components of the double jeopardy analysis under the Indiana Constitution. *Id.*

The statutory elements test compares the essential statutory elements of one charged offense with those of another charged offense. *Id.* at 50. This review does not evaluate the manner or means by which the offenses are alleged to have been committed, unless the manner or

---

ing, or after the trial," so long as the amendment does not prejudice the substantial rights of the defendant. *See Wilson v.*

*State,* 931 N.E.2d 914, 918 (Ind.Ct.App. 2010).

means comprises an essential element. *Id.* Each offense must contain at least one element that is separate and distinct from the other offense so that the same evidence is not necessary to convict for both offenses. *Id.*

■■■ On the other hand, the actual evidence test examines the evidence presented at trial to determine whether each offense was established by separate and distinct facts. *Id.* at 52. To establish a violation under this test, a defendant "must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53. The possibility must be reasonable and not speculative or remote. *Griffin v. State,* 717 N.E.2d 73, 89 (Ind.1999). To determine what facts were used to prove the offense, we examine the charging information, evidence, arguments, and jury instructions. *Goldsberry v. State,* 821 N.E.2d 447, 458 (Ind.Ct.App.2005).

With regard to the offense of child molesting, Indiana Code section 35–42–4–3(a) provides that

(a) A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if:

(1) it is committed by a person at least twenty-one (21) years of age. . . .

On the other hand, Indiana Code section 35–42–4–9(a), the sexual misconduct with a minor statute, provides that

(a) A person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen

(16) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits sexual misconduct with a minor, a Class C felony. However, the offense is:

(1) a Class B felony if it is committed by a person at least twenty-one (21) years of age. . . .

Adcock first contends that his convictions on counts I and III must be set aside in light of double jeopardy concerns. Count I was charged as follows:

Between August 2001 and August 2002, . . . Adcock, a person of at least twenty-one (21) years of age, did perform deviate sexual conduct with [L.P.], a child under the age of fourteen years, age 13, to-wit: by placing his finger in her vagina.

Appellant's App. p. 10. And Count III alleged that:

Between August 2001 and August 2002, . . . Adcock, a person of at least twenty-one (21) years of age, did perform deviate sexual conduct with [L.P.], a child under the age of fourteen years, age 13, to-wit: by placing his penis against her vagina.

*Id.*

At trial, L.P. testified that Adcock placed his penis against L.P.'s vagina in her bedroom. Tr. p. 446–48. L.P. also testified that in a separate encounter, Adcock placed his finger inside her vagina "once or twice" when she was in junior high. *Id.* at 453–54. In light of this testimony,[8] it is apparent that two separate events occurred and L.P.'s testimony, i.e., the evidentiary facts, was presented to establish the different elements of each offense. Thus, Adcock has failed to show that a double jeopardy violation occurred with regard to these offenses.

---

8. Adcock does not challenge the sufficiency of the evidence.

Adcock also maintains that his convictions on counts I and IV must be set aside because the same conduct was used to prove both child molesting and sexual misconduct with a minor. The State alleged in Count IV that

> Between May 21, 2003 and September 20, 2004 . . . Adcock, a person of at least twenty-one (21) years of age, did perform deviate sexual conduct with [L.P.], a child at least fourteen (14) years of age but less than sixteen (16) years of age, to-wit: placed his finger inside her vagina.

Appellant's App. p. 10.

Notwithstanding Adcock's contentions, we note that the offenses of child molesting and sexual misconduct differ with respect to the age element. And the evidence established that Adcock committed two separate offenses by performing sexual deviate conduct with L.P. while she was under the age of fourteen and when she was over the age of fourteen, but under the age of sixteen. Tr. p. 439–49, 453–54. To convict Adcock for child molesting and sexual misconduct with a minor, the State was required to establish that the victim was the required age when the sexual deviate conduct took place. As set forth above, L.P. testified that Adcock placed his finger in her vagina "once or twice" while she was in junior high school. *Id.* at 459. L.P. testified that her junior high years included seventh and eighth grade and that she was fourteen years old in the eighth grade and thirteen years old in the seventh grade. *Id.* at 414–15. Specific evidence of L.P.'s age was necessary to prove the offenses charged in Count I and Count IV. Therefore, the evidentiary facts establishing the elements of each offense were different and Adcock has failed to establish a double jeopardy violation on these counts.

Finally, Adcock contends that double jeopardy prohibitions bar the convictions for sexual misconduct with a minor as alleged in Counts IV and VI "for the same reasons as set forth [above]." Appellant's Br. p. 19. However, the allegations in each count concerned separate acts that were established by L.P.'s testimony at trial. The State alleged in Count IV that Adcock committed sexual misconduct by "plac[ing] his finger in [L.P.'s] vagina." Appellant's App. p. 66. And it was alleged in Count VI that Adcock committed sexual misconduct by "placing his penis against [L.P.'s] vagina." *Id.* As discussed above, L.P. testified at trial about these two specific incidents that proved the elements of each offense. As a result, Adcock's double jeopardy claim with regard to this issue fails.

### CONCLUSION

In light of our discussion above, we conclude that Adcock has failed to show that the prosecutor's analogy of this case to a jigsaw puzzle amounted to fundamental error, and that the trial court properly permitted the State to amend its Notice to have Adcock sentenced as an RSO. Finally, we conclude that none of Adcock's convictions are barred by double jeopardy principles.

The judgment of the trial court is affirmed.

NAJAM, J., and MATHIAS, J., concur.