# FOR PUBLICATION



**FILED**

Dec 08 2014, 9:28 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**C. BRENT MARTIN**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRIAN S. ADCOCK, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 47A01-1407-PC-283 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAWRENCE SUPERIOR COURT
The Honorable Michael A. Robbins, Judge
Cause No. 47D01-1305-PC-672

**December 8, 2014**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Brian Adcock appeals the post-conviction court's denial of his petition for post-conviction relief ("PCR petition"), which challenged his convictions for two counts of Class A felony child molesting and two counts of Class B felony sexual misconduct with a minor. We reverse and remand.

**Issue**

The combined and restated issue before us is whether Adcock's appellate counsel was ineffective for failing to challenge the sufficiency of the evidence against him on direct appeal.[1]

**Facts**

L.P. was born on September 21, 1988. Adcock lived in Bedford with L.P. and her mother, and he married L.P.'s mother when L.P. was twelve. Beginning when L.P. was in third grade, Adcock would come into L.P.'s bedroom at night about once a week and fondle her breasts and try to touch her vagina. Most of these touchings occurred over L.P.'s clothes, although Adcock would sometimes try to reach underneath her clothes.

L.P. began junior high school in the fall of 2001. L.P.'s junior high school included seventh and eighth grades. L.P. turned fourteen in September 2002, at the beginning of her eighth grade year. Sometime during her seventh grade year, Adcock began frequently giving her back rubs, and these would escalate into Adcock fondling L.P.'s breasts and touching her vagina. L.P. would later testify that Adcock usually "rubbed around" her

---

[1] We need not address Adcock's claim regarding ineffectiveness of trial counsel.

vagina with his fingers, but that "once or twice," he put his finger into her vagina. Tr. p. 453. L.P. also said, "He didn't do that that much." Id. L.P. was unsure what grade she was in when Adcock digitally penetrated her vagina.

Sometime during L.P.'s freshman year of high school, which would have been in 2003-04, Adcock began frequently rubbing his penis against L.P.'s vagina. L.P. specifically would later testify that Adcock "[j]ust rubbed against mine" and that he did not do anything else with his penis. Id. at 448.

L.P. told a friend about Adcock's conduct while she was in junior high school, but it was not reported to police at that time. In 2006, L.P. told a boyfriend about Adcock's conduct, and it was finally investigated by police in January 2008. On May 21, 2008, the State charged Adcock with a number of offenses related to L.P.[2] After several amendments and motions to dismiss, Adcock faced trial on three counts of Class A felony child molesting and three counts of Class B felony sexual misconduct with a minor, all of which alleged that Adcock engaged in "deviate sexual conduct" with L.P. App. pp. 65-66. The three child molesting counts were alleged to have occurred between August 2001 and August 2002, when L.P. was twelve or thirteen. The first count, Count 1 of the information, alleged that Adcock "plac[ed] his finger in her vagina"; Count 2 alleged that Adcock "plac[ed] his mouth on her vagina"; and Count 3 alleged that Adcock "plac[ed] his penis against her vagina." Id. The three sexual misconduct counts—Counts 4 through 6—were alleged to have occurred between May 21, 2003 and September 20, 2004 when L.P. was

---

[2] There also were some charges related to friends of L.P., but they are irrelevant to this case.

3

between fourteen and less than sixteen years old. The language of these counts was identical to Counts 1-3 with respect to the sex acts Adcock was alleged to have committed.

During Adcock's jury trial in September 2009, he successfully moved for a directed verdict on Counts 2 and 5 of the information because there was no evidence that Adcock had ever performed oral sex on L.P. The jury returned guilty verdicts on Counts 1, 3, 4, and 6. Adcock also was found to be a repeat sexual offender ("RSO") and sentenced accordingly.

On direct appeal, Adcock's attorney argued that the prosecutor committed misconduct during voir dire, that the trial court improperly allowed the State to make an amendment related to notice of the RSO, and that double jeopardy precluded his multiple convictions for both child molesting and sexual misconduct with a minor. We rejected all of Adcock's arguments and affirmed. Adcock v. State, 933 N.E.2d 21 (Ind. Ct. App. 2010). In addressing Adcock's double jeopardy claim, we specifically noted, "Adcock does not challenge the sufficiency of the evidence." Id. at 31 n.8. Our supreme court denied transfer.

Adcock subsequently filed a pro se PCR petition, which later was amended by counsel. Adcock contended that he received ineffective assistance of trial counsel for not having moved for directed verdicts on all counts and that he received ineffective assistance of appellate counsel for not challenging the sufficiency of the evidence on all counts. Adcock submitted affidavits from his trial and appellate attorneys that they had not considered moving for directed verdicts or challenging the sufficiency of the evidence on appeal, but that they believed there was in fact insufficient evidence on all the convictions.

4

Adcock moved for summary disposition of his PCR petition. The State afterward also moved for summary disposition. The PCR court granted the State's motion for summary disposition and rejected all of Adcock's claims, without entering any findings or conclusions. Adcock now appeals.

**Analysis**

The PCR court resolved this case by summary disposition on the State's motion, pursuant to Indiana Post-Conviction Rule 1(4)(g).[3] That rule provides:

> The court may grant a motion by either party for summary disposition of the petition when it appears from the pleadings, depositions, answers to interrogatories, admissions, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The court may ask for oral argument on the legal issue raised. If an issue of material fact is raised, then the court shall hold an evidentiary hearing as soon as reasonably possible.

Ind. Post-Conviction Rule 1(4)(g). We review a trial court's ruling on summary disposition as we would a ruling on summary judgment under Indiana Trial Rule 56. Allen v. State, 791 N.E.2d 748, 753 (Ind. Ct. App. 2003), trans. denied. Summary disposition should not be granted unless there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Id. Any doubts about the facts and inferences to be drawn from them must be resolved in favor of the non-movant. Id. The granting of a motion for summary disposition is a matter for appellate de novo determination when there are no disputed facts and the determinative issue is a question of law. Norris v. State, 896 N.E.2d

---

[3] The State did not seek summary disposition under Indiana Post-Conviction Rule 1(4)(f).

5

1149, 1151 (Ind. 2008). The PCR court also failed to enter any findings to accompany its order. Adcock contends the PCR court erroneously granted the State's motion for summary disposition and should have granted summary disposition in his favor instead pursuant to his own motion. Adcock does not request that we remand this case for an evidentiary hearing or for the PCR court to enter findings. The State, having moved for summary disposition, argues at the outset that the PCR court should have entered findings and asks us to remand for such findings to be entered, but alternatively argues on the merits that summary disposition was properly granted.

Regarding the State's remand request, it is true that Indiana Post-Conviction Rule 1(6) requires a PCR court to "make specific findings of fact, and conclusions of law on all issues presented, whether or not a hearing is held." This would seem to require PCR courts to enter findings and conclusions, even if it grants a motion for summary disposition. But see State v. Daniels, 680 N.E.2d 829, 831-32 (Ind. 1997) (comparing Indiana Post-Conviction Rule 1(4)(g) with Indiana Trial Rule 56 and stating, "[s]pecific findings and conclusions are neither required nor prohibited in the summary judgment context."). However, a PCR court's failure to enter specific findings of fact and conclusions of law in ruling on a PCR petition is not reversible error when the issues are sufficiently presented for review and addressed by the parties. Jackson v. State, 676 N.E.2d 745, 750 (Ind. Ct. App. 1997), trans. denied. If the facts underlying a claim are not in dispute, the issues are sufficiently clear, and both parties address the merits in their briefs, remand for specific findings by the PCR court is not necessary. Id. (citing Lowe v. State, 455 N.E.2d 1126, 1128 (Ind. 1983)).

6

We also note that whether a defendant received effective assistance of counsel during trial and appeal often is characterized as a factual, not legal, question. See Evolga v. State, 722 N.E.2d 370, 373 (Ind. Ct. App. 2000). A defendant claiming ineffective assistance of appellate counsel must show counsel was deficient in his or her performance and that the deficiency resulted in prejudice. Garrett v. State, 992 N.E.2d 710, 719 (Ind. 2013). To satisfy the first prong, the defendant must show that counsel's representation fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. Id. "Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." Timberlake v. State, 753 N.E.2d 591, 603 (Ind. 2001), cert. denied. In other words, to demonstrate deficient performance by appellate counsel, "'a defendant must show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy.'" Id. at 606 (quoting Ben-Yisrayl v. State, 738 N.E.2d 253, 260-61 (Ind. 2000), cert. denied).[4] If a defendant establishes deficient performance by appellate counsel, he or she must then show prejudice, meaning a reasonable probability that, but for counsel's errors, the result of the direct appeal would have been different. Reed v. State, 856 N.E.2d 1189, 1201 (Ind. 2006).

---

[4] Adcock's argument focuses solely on whether appellate counsel failed to raise an issue on direct appeal regarding the sufficiency of the evidence. Appellate counsel also may be ineffective for forfeiting a defendant's appeal altogether, or failing to present issues well. Garrett, 992 N.E.2d at 724.

Here, in addition to the direct appeal transcript, Adcock submitted an undisputed affidavit from his appellate attorney that he never considered raising a sufficiency of the evidence challenge to any of Adcock's convictions, but stating that there was in fact insufficient evidence to support any of the convictions. This affidavit fails to disclose any strategic or tactical reason for not challenging the sufficiency of the evidence on direct appeal, as might have excused counsel's failure to raise that issue, and instead plainly establishes that it was simply a matter of oversight. We do not believe there are any factual issues surrounding appellate counsel's performance that need to be resolved. Instead, the questions before us are purely legal: what were the legal merits of a sufficiency challenge to Adcock's convictions as compared to the issues actually raised, and would such a challenge likely have led to a different result on direct appeal?[5] We are in as good a position as the PCR court to answer such questions. Adcock's claims ultimately turn upon the likelihood of success he would have had before this court on direct appeal if he had argued insufficiency of the evidence. Also, both parties moved for summary disposition, indicating that both parties believed the issues were purely legal, not factual. Given the purely legal questions before us, and both parties having addressed the merits of those

---

[5] The State erroneously characterizes the issue of whether there was sufficient evidence to support Adcock's convictions as a factual issue. Deciding a question of fact requires a court to weigh evidence and consider witness credibility, which we will not do when reviewing whether there is sufficient evidence to support a conviction. Gray v. State, 903 N.E.2d 940, 943 (Ind. 2009). Rather, we will reverse a conviction as being unsupported by the evidence when, after considering only the evidence most favorable to the conviction, there is insufficient evidence as a matter of law on an element of a crime. Id. at 946; see also Abdullah v. State, 847 N.E.2d 1031, 1035 (Ind. Ct. App. 2006).

questions, we proceed to rule upon them without remanding to the PCR court to enter findings and conclusions.

We first address Adcock's conviction under Count 1, which alleged that Adcock committed Class A felony child molesting by placing his finger inside L.P.'s vagina between August 2001 and August 2002. In order to convict Adcock of this offense as charged under the statute in effect at the time of the alleged offense and trial, the State was required to prove that he performed deviate sexual conduct with L.V. when she was under fourteen years of age and he was over twenty-one years of age. I.C. § 35-42-4-3(a) (2002). "Deviate sexual conduct" was defined as "an act involving: (1) a sex organ of one person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." I.C. § 35-41-1-9 (2002).[6] Adcock does not deny that L.P. testified to his digitally penetrating her vagina "once or twice" while she was in junior high school, which she attended between August 2001 and May 2003. Tr. p. 453.[7] Such conduct would have constituted deviate sexual conduct under the child molesting statute in effect at the time of the offenses and Adcock's trial. See Harwood v. State, 555 N.E.2d 513, 515 (Ind. Ct. App. 1990).

---

[6] The legislature has now replaced the phrase "deviate sexual conduct" with "other sexual conduct." I.C. § 35-31.5-2-221.5 (2014).

[7] In its brief, the State argues that L.P. testified that "each touch to the vagina involved what L.P. described as either 'massage,' or insertion, or 'rubbing around,' on a regular (once or twice a week) basis . . . ." Appellee's Br. p. 17. This description of the evidence arguably blurs the line between child molestation by fondling, of which Adcock was not charged, and child molestation by deviate or other sexual conduct. The statutory provisions for these offenses are separate and distinct, and molestation by fondling is not a lesser-included offense of molestation by intercourse or deviate or other sexual conduct. See Downey v. State, 726 N.E.2d 794, 798-99 (Ind. Ct. App. 2000), trans. denied. Legally, digital penetration is not equivalent to "massage" or "rubbing around." L.P. unequivocally testified that, although Adcock frequently touched her vagina, he only inserted his finger "once or twice." Tr. p. 453.

9

However, Adcock notes that when directly asked, L.P. could not remember when the digital penetrations occurred or what grade she was in at the time—only that they had occurred sometime during junior high school. This is highly relevant, because L.P. turned fourteen on September 21, 2002, at the beginning of her eighth grade year. Once L.P. turned fourteen, Adcock's act of digitally penetrating her vagina would have constituted Class B felony sexual misconduct with a minor, not Class A felony child molesting. See I.C. § 35-42-4-9(a) (2002). There is longstanding caselaw holding that, although time is not of essence in most child molesting cases, the exact date of an act becomes important if "the victim's age at the time of the offense falls at or near the dividing line between classes of felonies." Barger v. State, 587 N.E.2d 1304, 1307 (Ind. 1992); see also Love v. State, 761 N.E.2d 806, 809 (Ind. 2002). If it is difficult to tell whether a molestation victim was above or below such a dividing line at the time of the offense, then the State may charge and convict the defendant of the lesser felony. Barger, 587 N.E.2d at 1307-08. If it is impossible to tell whether the victim was above or below the minimum age of consent at the time of an act, a defendant cannot be convicted of any crime. Id. at 1308 n.3.

This was a case where the exact date or dates of Adcock's alleged conduct was important because of the dividing line between child molesting and the less serious crime of sexual misconduct with a minor. Here, L.P. could only testify that Adcock had inserted his finger into her vagina sometime while she was in junior high school; she was thirteen for about one-half of that time and fourteen for the other half. There is a lack of proof as to L.P.'s age when the conduct occurred. Such deficiency in L.P.'s testimony is clear and obvious on the face of the record, and Barger's holding regarding the necessity of proving

the exact date of an occurrence in cases such as this was well-settled at the time of Adcock's direct appeal. If such an argument had been made on direct appeal, we would have been compelled to rule in Adcock's favor and hold that there was insufficient evidence to convict him of Class A felony child molesting.

The next question is whether Adcock could have instead been convicted of Class B felony sexual misconduct with a minor on Count 1. An identical question is whether there was sufficient evidence to support Adcock's conviction on Count 4 for Class B felony sexual misconduct with a minor, which also was based on his alleged digital penetration of L.P.'s vagina. Although Barger would permit such convictions, given that L.P. clearly was under sixteen years of age when she was in junior high school, the statute of limitations for Class B felonies comes into play here. When these charges were filed, the statute of limitations for a Class B felony was five years. I.C. § 35-41-4-2(a)(1) (2008). The statute contained, and still contains, an extended statute of limitations, up to a victim's thirty-first birthday, for certain sex offenses: vicarious sexual gratification, child solicitation, child seduction, incest, and child molestation by sexual intercourse or deviate (or "other") sexual conduct under Indiana Code Section 35-42-4-3(a); there was and is no extended limitations period for sexual misconduct with a minor, or for child molesting by fondling under Indiana Code Section 35-42-4-3(b). See I.C. § 35-41-4-2(e) (2008); I.C. § 35-41-4-2(e) (2014). Here, given that the State filed its information on May 21, 2008, any charges against Adcock for sexual misconduct with a minor occurring before May 21, 2003, would have been time-barred.

In King v. State, 560 N.E.2d 491 (Ind. 1990), the State alleged that the defendant molested the victim sometime in the spring of 1981 and filed a charge, which had a five-year statute of limitations, on March 19, 1986. The victim testified as to an ongoing series of incidents beginning in 1979 that lasted four-and-a-half years. However, there was no testimony from the victim or anyone else establishing "with any degree of certainty" when the event that was alleged to have occurred in the spring of 1981 took place; namely, whether it occurred before or after March 19, 1981. King, 560 N.E.2d at 493. The victim remembered generally that the incident took place during the 1980-81 academic year but could not remember specifically when the molestation occurred. A friend of the victim had also recalled being told about the molestation, but not when it occurred. Our supreme court reversed the defendant's conviction because the State had failed to prove beyond a reasonable doubt that the charged molestation occurred on or after March 19, 1981. Id.

This case is highly similar to King. L.P. could remember that Adcock's acts of digital penetration occurred sometime during junior high school, but there is no testimony that any such act occurred on or after May 21, 2003, which would have been at the very end of L.P.'s eighth grade year. One of L.P.'s friends also testified about being told by L.P. that Adcock was "touching" her, sometime when they were fourteen or fifteen, but that L.P. was "general" in her description of what happened. Tr. p. 523. Thus, the friend did not testify as to any time frame as to when Adcock might have digitally penetrated L.P. In sum, it is obvious from the face of the record that the State failed to prove that Adcock's alleged acts of digitally penetrating L.P. occurred on or after May 21, 2003. The statutory limitations period for sexual misconduct with a minor likewise was clear at the time of

12

Adcock's direct appeal, and King's resolution of a statute of limitations question in favor of the defendant on very similar facts was on the books as well. If a statute of limitations argument had been made on direct appeal, we would have been compelled to rule that there was insufficient evidence that the acts alleged in Counts 1 and 4 had occurred within the required statute of limitations for Class B felony sexual misconduct with a minor.

Next, we address Adcock's convictions under Counts 3 and 6. Count 3 alleged Adcock committed Class A felony child molesting via deviate sexual conduct "by placing his penis against [L.P.'s] vagina," while Count 6 alleged he committed Class B felony sexual misconduct with a minor by engaging in precisely the same conduct. App. pp. 65-66. The first problem with the conviction under Count 3 is that L.P. testified with perfect clarity that the first time Adcock touched her vagina with his penis was when she was in high school.[8] L.P. would have been no younger than either fourteen or fifteen at the time, above the maximum age to support a charge of child molesting; the act instead would have been sexual misconduct with a minor.

---

[8] Again, the State's description of the facts is misleading and over-generalized. It argues in part, "the touches of L.P.'s vagina with Adcock's penis are or were included, in L.P.'s testimony, as part of the 'same' kind of touches she experienced over a very long period of time." Appellee's Br. p. 19. That is an incorrect reading of L.P.'s testimony. At the outset of her testimony, she gave a general overview of everything she claimed Adcock had done to her over the years, beginning when she was in third grade and ongoing through high school. Then, she provided more detailed testimony regarding what exactly Adcock did to her and when. With respect to Adcock's touching L.P.'s vagina with his penis, the prosecutor asked her, "When would that have occurred? The touching your vagina with the penis. How old would you have been? What grade?" Tr. p. 447. L.P. responded, "High school. . . . My freshman year maybe." Id.

Finally, we note the State argues, "L.P. stated that by private area she meant her 'vagina' and not just the vulva or labia or clitoris." Appellee's Br. p. 18. This suggests that L.P. gave a detailed description of her genitalia, but she did not. She simply referred to Adcock touching her "vagina," without elaboration. Tr. p. 427. We urge the State to be more cautious when relating facts in its briefs.

There is an even more fundamental problem with Counts 3 and 6, however. To begin with, the definition of deviate sexual conduct included any act involving one person's sex organ and the other person's anus or mouth. I.C. § 35-41-1-9 (2002). It did not include mere contact between two sex organs. The definition of deviate sexual conduct did include any penetration of a person's sex organ by an "object." Id. Likewise, Class A felony child molesting or Class B felony sexual misconduct with a minor could be proven by evidence of sexual intercourse. Sexual intercourse is defined as "an act that includes any penetration of the female sex organ by the male sex organ." I.C. § 35-41-1-26 (2002); I.C. § 35-31.5-2-302 (2014).

Thus, the question here is whether there is any evidence that Adcock penetrated L.P.'s sex organ with his penis. At trial, L.P. testified as follows:

> Q: Okay. Now a moment ago you were talking in general terms and you said he also touched your vagina with his penis. Tell me about that.
>
> A: I guess when he'd rub my back and stuff, he still wore that robe and he'd pull out his penis and rub on it with his penis.
>
> Q: Where were you and where was he, how was this happening?
>
> A: I laid in the floor and he'd get over the top of me.
>
> \* \* \* \* \*
>
> Q: And I want to make sure we're clear. His, I want you to tell me what his penis, what part of your body his penis touched.
>
> A: My private area, my vagina.

14

> Q: Okay. And when he did that what specifically did he do?
>
> A: Just rubbed against mine.
>
> Q: Did he do anything else with his penis?
>
> A: No.

Tr. pp. 446-448.

The State relies exclusively upon Short v. State, 564 N.E.2d 553 (Ind. Ct. App. 1991), in arguing that the above testimony was sufficient evidence of penetration. In that case, we held that "penetration" may be proven by evidence of any penetration of the female sex organ, including external genitalia such as the vulva or labia, and that proof of penetration of the vagina is not required. Short, 564 N.E.2d at 559. We affirmed a conviction for molestation based on sexual intercourse where a victim who was five at the time of the incident and six at the time of trial testified regarding the defendant's touching her "butt" with his "front butt," and there was medical evidence that the victim's hymen had sustained trauma. Id. The State cites this case for the proposition that proof that a defendant's penis and a victim's vagina "made contact" is sufficient evidence of penetration. Appellee's Br. p. 22.

The State wholly fails to acknowledge our supreme court's decision in Spurlock v. State, 675 N.E.2d 312 (Ind. 1996), which Adcock argues is controlling here. This case, while agreeing with Short's general holding and that "proof of the slightest penetration is enough to support a conviction," clearly establishes that mere contact between a male and female sex organ is not by itself sufficient evidence of penetration. Spurlock, 675 N.E.2d

15

at 315. There, the twelve-year-old victim testified that the defendant's penis touched her vagina. She also said that the defendant "tried" to have intercourse with her but she did not know whether he had penetrated her vagina, and there was no medical evidence of penetration. The court reversed the defendant's conviction for Class A felony child molesting because there was insufficient evidence of penetration. Spurlock, 675 N.E.2d at 315. The court specifically noted that, unlike Short, it was "confronted with a situation where the victim herself, who was of an age to understand and respond to the questions, did not state that penetration occurred and there was no medical or physical evidence of penetration." Id.

L.P. was twenty at the time of trial, describing acts that allegedly took place when she was fourteen or fifteen. At no time did she testify that Adcock penetrated any part of her genitalia with his penis; in fact, the prosecutor never asked her whether such penetration occurred. In describing Adcock's digital penetration of her, L.P. testified as to Adcock penetrating her external genitalia but not her vagina. Thus, she had the capability of describing such penetration by Adcock's penis if it had occurred, but she did not.[9] There was no medical or physical evidence of penetration. We conclude there is a total absence of evidence of Adcock having penetrated L.P.'s sex organ with his penis, and such absence is plain and obvious on the face of the record and should have been noticed by appellate counsel if he reviewed the transcript of Adcock's trial in full. That transcript is relatively brief. The State makes no argument that Spurlock is distinguishable from the present case;

---

[9] L.P. testified that Adcock's finger went "[i]nside, but not inside . . . [a]round the hole . . . [i]n the folds." Tr. p. 460.

16

it does not even mention the case in its brief. We see no grounds for distinguishing it, and it was available to appellate counsel at the time of Adcock's direct appeal. In light of Spurlock, we believe that if appellate counsel had challenged the sufficiency of the evidence on Counts 3 and 6 on direct appeal, we would have been compelled to reverse those convictions.

We further observe that, although there was evidence that Adcock touched L.P.'s vagina with his penis, it is not possible on appeal to merely reduce a conviction for molestation or sexual misconduct with a minor by penetration to the less-serious offense of molestation or misconduct by touching or fondling when the evidence of penetration is lacking. See Downey v. State, 726 N.E.2d 794, 798-99 (Ind. Ct. App. 2000), trans. denied. "While child molesting by fondling or touching is a lesser offense than child molesting by deviate sexual conduct [or penetration] in terms of sentencing, it is neither inherently nor factually included in the greater offense and is in fact an entirely separate offense." Id. at 799. Thus, a sufficiency challenge to Adcock's convictions on Counts 3 and 6 would have resulted in complete vacation of those convictions, not their reduction to lesser felonies. See also Spurlock, 675 N.E.2d at 317 (ordering vacation of child molesting conviction unsupported by sufficient evidence of penetration, not reduction of that conviction to a lesser conviction for molestation by touching or fondling).

To summarize, we conclude appellate counsel, for no apparent strategic or tactical reason, overlooked significant and obvious problems with the sufficiency of the evidence supporting each of Adcock's convictions. If such arguments had been made, there is more than a reasonable probability that they would have been successful; we would have been

required to vacate each of the convictions. And, because those vacations would be based upon insufficient evidence, the State would be precluded by the Double Jeopardy Clause from retrying Adcock. See Jaramillo v. State, 823 N.E.2d 1187, 1190 (Ind. 2005), cert. denied. We also conclude that these sufficiency problems are stronger than the issues appellate counsel actually raised on direct appeal. As such, Adcock received ineffective assistance of appellate counsel as a matter of law, and his convictions must now be vacated.

We recognize that L.P. testified at length about a variety of inappropriate and illegal conduct by Adcock and that as a result of our decision today, he will face no legal consequences for those actions. Nevertheless, it was the State's duty to present sufficient evidence to support Adcock's convictions. It was the duty of appellate counsel to bring the plain, significant, and obvious sufficiency problems with Adcock's convictions to this court on direct appeal. And, it is our duty to follow the law as clearly set forth in our statutes and our supreme court's decisions and to ensure that a defendant's convictions are consistent with that law and the evidence presented at trial.

## Conclusion

The trial court erred in granting the State's motion for summary disposition. Rather, we conclude as a matter of law that Adcock received ineffective assistance of appellate counsel. We reverse and remand for the granting of Adcock's PCR petition and the vacating of Adcock's convictions for two counts of Class A felony child molesting and two counts of Class B felony sexual misconduct with a minor.

18

Reversed and remanded.

BRADFORD, J., and BROWN, J., concur.