## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 06 2015, 9:50 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Bruce W. Graham<br>Graham Law Firm P.C.<br>Lafayette, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Chandra K. Hein<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shannon Robertson,<br><br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br><br>*Appellee-Plaintiff* | February 6, 2015<br><br>Court of Appeals Cause No.<br>79A05-1407-CR-302<br><br>Appeal from the Tippecanoe Superior Court, The Honorable Thomas H. Busch, Judge<br>Cause No. 79D02-1307-FA-00010 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Shannon Robertson was working as an escort when she developed a romantic relationship with one of her clients, James Brent Harmon. After Robertson and

Harmon broke up, she was told to stop contacting Harmon, but she did not stop. Robertson obtained a shotgun and took it to Harmon's house, sent him a text to lure him outside, pointed the shotgun at him, and pulled the trigger. The shotgun did not fire and Harmon was able to run away. On appeal, Robertson argues that her convictions for attempted battery and intimidation violate Indiana's prohibition against double jeopardy under the actual-evidence test. Finding that the same evidence was used to prove the threat element of intimidation as was used to prove attempted battery, we reverse Robertson's intimidation conviction and remand to the trial court with instructions to vacate the conviction.

# Facts and Procedural History

Shannon Robertson lived in Indianapolis, working as an escort and earning approximately $150,000.00 per year. In July 2009 James Brent Harmon, a math teacher who was married with children, became one of Robertson's clients. After several meetings, they began a romantic relationship, which lasted "[o]ff and on" for three and a half years. Tr. p. 58. The relationship was tumultuous—they were both "hotheads," according to Robertson—and when things were "off," Robertson would harass Harmon, usually "via the internet." *Id*. at 209, 59. She would, for instance, post disparaging comments about Harmon on blogs or websites, or create a Facebook page in Harmon's name, using his photos and identity to draw people Harmon knew to that page, where

she would reveal that he was involved with an escort.  As a result of his relationship with Robertson, Harmon and his wife divorced in April 2010.

[3]  Harmon's relationship with Robertson ended in January 2013, and in June of that year, Harmon stopped communicating with Robertson: his attorney sent a letter to Robertson requesting that she cease all communication with Harmon, and Harmon stopped initiating or responding to Robertson's ongoing attempts to communicate by telephone, e-mail, and text messages.

[4]  On July 7, 2013, at 9:56 p.m., Robertson sent a text to Harmon stating that she had left his Cubs blanket and some money outside his house.  *See* State's Ex. 35.  In fact, she had obtained a shotgun from her father's house and was waiting outside for Harmon.  After receiving the text message, Harmon went outside and walked around his house.  He spotted Robertson "creeping up along the tree line." Tr. p. 67.  Harmon asked her what she was doing there and took a step toward her.  At that point, Harmon saw her raise her arms in such a way that he thought she had a long gun, so he turned and started running back into his house.  And "almost instantaneously when [he] turned to run[,]" Harmon heard a "click[,]" which sounded like "the hammer coming down on a gun." *Id*. at 70.  Robertson later testified that she had aimed the shotgun in the air and pulled the trigger.  *Id*. at 221.  In any event, the loaded shotgun did not fire.

[5]  Once inside his house, Harmon locked the door and called 911.  While he was on the phone, he saw that someone was "trying to get in [his] front door . . .

working the latch." *Id*. at 72. Shortly thereafter, the police arrived, Robertson was apprehended, and the shotgun was located in a nearby car.

[6] Robertson was charged with Count I, attempted murder, a Class A felony; Count II, attempted battery (while armed with a deadly weapon), a Class C felony; Count III, intimidation (drawing or using a deadly weapon), a Class C felony; Count IV, criminal recklessness, a Class D felony; and Count V, pointing a firearm, a Class D felony. The State later amended the charging information to include Count VI, attempted aggravated battery, a Class B felony. Following a jury trial in May 2014, Robertson was found guilty on all counts except Count I, attempted murder, and Count VI, attempted aggravated battery. Because they were lesser-included offenses, the trial court vacated Robertson's convictions on Counts IV and V. Thereafter Robertson was sentenced on Count II, Class C felony attempted battery, to five years executed in the Department of Correction with one year suspended to probation, and on Count III, Class C felony intimidation, to five years executed in the Department of Correction with one year suspended to probation, with the sentences to be served concurrently.

[7] Robertson now appeals.

# Discussion and Decision

[8] On appeal, Robertson contends that her convictions on Count II, Class C felony attempted battery while armed with a deadly weapon, and Count III,

Class C felony intimidation with a deadly weapon, violate the Double Jeopardy Clause of the Indiana Constitution, which provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), our Supreme Court concluded that two or more offenses are the same offense in violation of article 1, section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013).

[9] Under the actual-evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. *Id*. To find a double-jeopardy violation under this test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id*. (quoting *Richardson*, 717 N.E.2d at 53). To determine what facts were used to prove the offense, we examine the charging information, evidence, arguments, and jury instructions. *Adcock v. State*, 933 N.E.2d 21, 31 (Ind. Ct. App. 2010), *trans. denied*.

[10] In *Richardson*, the defendant appealed his convictions for robbery and Class A misdemeanor battery, arguing that the convictions violated the Double Jeopardy Clause of the Indiana Constitution. *See Richardson*, 717 N.E.2d at 37. Specifically, the defendant contended that the evidence of the beating before the

robbery formed the basis of both convictions. *Id*. at 54. Our Supreme Court agreed, finding that from the evidence presented, there was a reasonable possibility that the evidentiary facts used to establish the essential elements of robbery were also used to establish the essential elements of the Class A misdemeanor battery. *Id*. Thus, the Court concluded that convicting and sentencing the defendant on both offenses violated the Indiana Double Jeopardy Clause. *Id*.

[11] In the case before us today, Robertson was convicted and sentenced on Class C felony attempted battery and Class C felony intimidation. At the time Robertson committed these offenses,[1] Class C felony battery was defined as follows: "A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, . . . a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon[.]" Ind. Code Ann. § 35-42-2-1(a)(3) (West 2012). Attempt was defined as follows:

> A person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime. An

---

[1] The Indiana General Assembly revised our criminal code effective July 1, 2014.

> attempt to commit a crime is a felony or misdemeanor of the same
> level or class as the crime attempted.

Ind. Code Ann. § 35-41-5-1(a) (West 2012). And Class C felony intimidation was defined as follows:

> (a) A person who communicates a threat to another person, with the intent:
>
> > (1) that the other person engage in conduct against the other person's will;
> >
> > (2) that the other person be placed in fear of retaliation for a prior lawful act;
>
> *  *  *  *  *
>
> commits intimidation[.] . . .
>
> (b) . . . [T]he offense is a:
>
> > (2) Class C felony if, while committing it, the person draws or uses a deadly weapon.

Ind. Code Ann. § 35-45-2-1 (West 2012) (formatting altered).

[12] Here, Robertson argues that the evidence used to establish intimidation was the same as that used to establish attempted battery. Specifically, she argues that under the actual-evidence test, the same evidence used to establish the threat element required in intimidation was used to establish attempted battery with a deadly weapon. As stated in her brief, "It was the act of pointing the firearm

and pulling the trigger which constituted both the attempted battery, and the intimidation.  The threat was pointing the firearm, and the battery was pointing the firearm and pulling the trigger."  Appellant's Br. p. 9.  We agree.

[13]     To prove that Robertson committed intimidation, the State relied solely on the fact that she pointed a gun at Harmon.  This is clear from the State's closing argument:

> Communicated a threat.  What is a threat?  It's communication by words or action.  *We know she didn't speak to [Harmon] so let's look at her actions.  Pointing a firearm at him*. . . .  Pointing a firearm at someone, is putting them in fear that you're going to unlawfully injure them.  That's her intention.  She wants to put him [in] fear.  *She pointed a shotgun at him.  That's communicating a threat.*  With intent that [] Harmon . . . engage in conduct against his will or with the intent that [] Harmon be placed in fear of retaliation for a prior unlawful act.

Tr. p. 248 (emphasis added).

[14]     To prove that Robertson committed attempted battery with a deadly weapon, the State relied on the attempted firing of the loaded shotgun that was pointed at Harmon.  The State summarized the evidence in support of this offense in this portion of the closing argument:

> Now, she didn't walk up to him.  She didn't place her hands on him.  Didn't try to do that.  But she tried to touch him with the shot shell.  That's the touching here.  That's the touching we're talking about.  It doesn't have to be touching with your hands.  It can be touching with an object.  And in this case, that object was the shot shell. . . .  She got the gun.  She got the ammo.  And she drove up to West Lafayette.  She sent a message to [Harmon].  To lure him outside.  To get him to come outside so that she could shoot him.  She was lying in wait.  She had her shotgun ready.  She loaded the shotgun.  When [he] came

outside, she snuck up behind him, he turned and looked at her and *she raised that shotgun, she pointed it at him, and then she attempted to fire it*. Each of these are substantial steps toward the commission of the crime of battery at least.

*Id*. at 250-51 (emphasis added).

[15] The State relied on the same act—pointing a shotgun at Harmon—to convict Robertson of both attempted battery and intimidation. To the extent that the State also relied on Robertson pulling the trigger of the shotgun to prove the attempted-battery charge, the act of pointing the firearm at Harmon was nonetheless necessary to sustain the attempted-battery charge. Thus, we conclude that Robertson has demonstrated a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of attempted battery were also used to establish intimidation. Accordingly, we reverse and remand to the trial court with instructions to vacate the Class C felony intimidation conviction.

[16] Reversed and remanded with instructions.

Baker, J., and Riley, J., concur.