## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Oct 27 2015, 9:32 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Marce Gonzalez, Jr.
Dyer, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Jeffery Allen Hmurovic, Sr.

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 27, 2015

Court of Appeals Case No.
45A03-1503-CR-94

Appeal from the Lake County
Superior Court

The Honorable Salvador Vasquez,
Judge

Trial Court Cause No.
45G01-1403-FC-25

**Altice, Judge.**

## Case Summary

[1] Following a jury trial, Jeffery Allen Hmurovic, Sr. was convicted of class B felony Sexual Misconduct with a Minor[1] and class C felony Incest.[2] He challenges, on appeal, only the former conviction and his aggregate sentence. Hmurovic presents four appellate issues of which we find the following dispositive: Did the State present sufficient evidence to support his conviction for sexual misconduct with a minor?

[2] We reverse in part and remand.

## Facts & Procedural History

[3] E.H. was born in September 1987 to Jeffery and Donna Hmurovic. She is the youngest of three children born to the Hmurovics, having two older brothers. E.H. has a learning disability and has always lived with her parents. They lived on Maple Street in Gary until E.H. was almost eighteen years old. Thereafter, except for a brief period of homelessness, the family lived on Elkhart Street in Lake Station.

[4] Hmurovic began having sexual intercourse with E.H. while in the home on Maple Street. By the time the family was evicted in August 2005, the sexual activity between Hmurovic and his teenage daughter had been going on for

---

[1] Ind. Code § 35-42-4-9 (a)(1). Effective July 1, 2014, this offense was reclassified as a Level 4 felony. Because Hmurovic committed this offense prior to that date, it retains its prior classification as a class B felony.

[2] Ind. Code § 35-46-1-3. Effective July 1, 2014, this offense was reclassified as a Level 5 felony.

quite some time. E.H. "[k]ind of" remembered sexual activity with her dad around the age of sixteen. *Transcript* at 92. She could not, however, recall at trial whether it began before she was sixteen. The sexual relationship continued on a regular basis into E.H.'s adulthood.

[5] E.H.'s mother died in June 2013, and around this same time, E.H. became impregnated by her father. On March 9, 2014, E.H. gave birth to a baby girl, with her father alongside during the delivery. Hmurovic made a number of curious statements at the hospital, which caused the nursing staff concern. Similarly, E.H. told hospital staff that she was a virgin, there was no father, and the baby was a miracle from her mother.

[6] The Indiana Department of Child Services (the DCS) began investigating the matter on March 10, 2014, and the City of Lake Station Police Department became involved shortly thereafter. The baby was taken into custody by the DCS, and Hmurovic was interviewed by police on March 12.

[7] During the interrogation, Hmurovic initially denied having any sexual contact with his daughter. E.H., however, had told investigators otherwise. When confronted with E.H.'s statements, Hmurovic eventually admitted the sexual relationship, placing much of the blame on his daughter. The detectives pressed him for information regarding when the sexual intercourse began, and Hmurovic indicated he could not recall. At one point, he stated that the first time he had intercourse with E.H. was at the Maple Street residence, which would have been before she turned eighteen. He believed the first incident was

sometime after junior high school.[3] Hmurovic admitted that over the last nine years or so he had sex with his daughter one to two times per week. DNA testing confirmed that Hmurovic was the father of E.H.'s baby.

[8]     The State charged Hmurovic with four counts: Count I, class A felony child molesting (victim under the age of fourteen); Count II, class B felony sexual misconduct with a minor (victim at least fourteen but less than sixteen); Count III, class B felony incest (victim under the age of sixteen); and Count IV, class C felony incest. The jury acquitted Hmurovic of Count I and found him guilty of the remaining counts. At the sentencing hearing on February 11, 2015, the trial court merged Counts II and III. The court entered judgment of conviction on Counts II and IV and sentenced Hmurovic to consecutive terms of fifteen and six years, respectively, for an aggregate sentence of twenty-one years.

## Discussion & Decision

[9]     Hmurovic contends that the State failed to present sufficient evidence to support his conviction for class B felony sexual misconduct with a minor.[4] Specifically, he argues that the State presented insufficient evidence that E.H. was under the age of sixteen when he first performed sexual intercourse or deviate sexual conduct with her.

---

[3] The State indicates that Hmurovic admitted he began having sex with his daughter "just after she started junior high school". *Appellee's Brief* at 4. This is a misstatement of the record.

[4] Hmurovic does not challenge his incest conviction on appeal.

[10] The standard of review of a jury verdict is well settled. When reviewing the sufficiency of evidence supporting a conviction, we neither reweigh the evidence nor judge the credibility of witnesses. *Staton v. State*, 853 N.E.2d 470, 474 (Ind. 2006). We, rather, look to the evidence most favorable to the verdict together with all reasonable inferences to be drawn from that evidence. *Id.* We will affirm the verdict if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

[11] To prove that Hmurovic committed class B felony sexual misconduct with a minor, the State was required to prove beyond a reasonable doubt: 1) when he was at least twenty-one years of age; 2) Hmurovic performed sexual intercourse or deviate sexual conduct with E.H.; 3) when E.H. was at least fourteen years of age, but less than sixteen years of age. Hmurovic challenges only the sufficiency of the evidence with respect to the last element, E.H.'s age. I.C. § 35-42-4-9 (a)(1).

[12] In a criminal prosecution, the State must prove every element of the offense charged beyond a reasonable doubt, including statutorily specified ages. *See Staton*, 853 N.E.2d at 473. Circumstantial testimonial evidence, however, can be sufficient to prove age. *Id.* at 474.

[13] The State contends that the following evidence was sufficient to establish E.H.'s age at the time Hmurovic began having sexual intercourse with her:

Defendant admitted that he began fondling and having sex with E.H. just after she entered Junior High School when the family lived on Maple Avenue. E.H. was born on September 19, 1987, and logically would have been in Junior High School and High School between the ages of 14 and 16 which is the time specified in Count II. Moreover, E.H. testified that she told Chief Garber she was around 13 years of age when Defendant began having sex with her.

*Appellee's Brief* at 9 (citations to record omitted).

[14] This court has viewed and carefully listened to Hmurovic's videotaped interrogation a number of times, and Hmurovic did not indicate that the sexual activity began *just after* his daughter *entered* junior high school. Rather, he was equivocal regarding when it began and stated that it maybe began *after junior high* while they were still living on Maple. The evidence reveals that the family moved from the Maple residence the month before E.H. turned eighteen. Accordingly, Hmurovic's statement does not establish that the sexual activity began when E.H. was fourteen or fifteen years of age.

[15] The remaining evidence upon which the State relies comes from the following portion of E.H.'s testimony:

> Q.     How old were you when you started having sexual contact with your dad?
>
> A.     I can't remember the age.
>
> Q.     Do you remember telling Chief Garber around 13?

A.    Yeah, but that popped in my head. I truly don't remember when I was 13.

*Transcript* at 66. E.H. then went on to testify, like her father had indicated, that it began in the Maple residence. When asked by the State, she agreed that the sexual activity "had already been going on for quite some time" when the family moved from the Maple residence. *Id*. at 67. Later, E.H. testified she did not remember having sex with her father prior to her sixteenth birthday but that she "[k]ind of" remembered it going on around the age of sixteen. *Id*. at 92.

[16]    E.H.'s testimony does not establish beyond a reasonable doubt that the sexual activity began when she was fourteen or fifteen years of age. *See Adcock v. State*, 22 N.E.3d 720, 726 (Ind. Ct. App. 2014) (finding lack of proof as to victim's age with respect to a child molesting charge, where victim could only testify that the sexual abuse occurred while she was in junior high school; she was thirteen for about one-half of that time and fourteen for the other half). Further, we observe that the jury acquitted Hmurovic of Count I, the class A felony child molesting charge, which alleged sexual intercourse or deviate sexual conduct when E.H. was under the age of fourteen. Thus, the jury apparently did not rely on E.H.'s acknowledgment that she had previously told an investigator that it started around the age of thirteen.

[17]    The only evidence placing E.H. within the required age range of the sexual misconduct charge was the testimony of Lynn Wronko, a social worker at the hospital where E.H. gave birth. Wronko testified that E.H. informed her in the hospital that the sexual relationship with her dad "had been going on for 12

years." *Transcript* at 127. E.H. was twenty-seven when she made this statement, so that would have placed the beginning of the sexual abuse at the age of fifteen. This evidence, however, was expressly limited by the trial court, after a proper objection by the defense, to use for impeachment purposes. Accordingly, the evidence could not be used by the jury as substantive evidence to establish the victim's age.[5] *Lawrence v. State*, 959 N.E.2d 385, 389 (Ind. Ct. App. 2012) ("evidence admitted only for impeachment may not be used as substantive evidence"), *trans. denied*.

[18] The State had the burden of establishing that Hmurovic performed sexual intercourse or deviate sexual conduct with E.H. when E.H. was fourteen or fifteen years of age. On this record, we simply cannot find that sufficient evidence exists with respect to the age element. As a result, we must reverse his conviction for sexual misconduct with a minor.[6]

[19] On remand, the trial court has the authority to resentence Hmurovic on the class C felony conviction for incest. *See Sanjari v. State*, 981 N.E.2d 578, 583 (Ind. Ct. App. 2013), *trans. denied* ("trial court [has] flexibility upon remand, including the ability to increase sentences for individual convictions without

---

[5] The State improperly relied on this prior inconsistent statement as substantive evidence of the victim's age when making its closing argument and rebuttal closing argument to the jury. *See Transcript* at 271 and 289.

[6] Because we reverse this conviction, we need not reach the three remaining issues (instructional error, prosecutorial misconduct, and sentencing), which Hmurovic expressly presents as alternative arguments. As to the instruction issue, we note that Hmurovic proposed a final instruction that would have specifically, and correctly, informed the jury of the limited use of impeachment evidence, which was of particular import in this case. The trial court refused this instruction.

giving rise to a presumption of vindictive sentencing, so long as the aggregate sentence is no longer than originally imposed"). This flexibility to resentence is in recognition of the fact that "a trial court is likely to view individual sentences in a multi-count proceeding as part of an overall plan, a plan that can be overthrown if one or more of the convictions is reversed or reduced in degree." *Id.* Given the circumstances of this case, we remand this case to the trial court to vacate Count II and to resentence Hmurovic, if the court so chooses, on Count IV.

[20] Judgment reversed in part and remanded.

Riley, J., and Brown, concur.