## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 17 2020, 10:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stephenie K. Gookins
Cate, Terry & Gookins LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Harry H. Rogers,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

January 17, 2020

Court of Appeals Case No.
19A-CR-1509

Appeal from the Hamilton
Superior Court

The Honorable Michael A. Casati,
Judge

Trial Court Cause No.
29D01-1802-FA-1470

**Bradford, Chief Judge.**

# Case Summary

Harry H. Rogers was charged with and convicted of Count I–Class A felony child molestation ("Count I"), Count II–Class A felony child molestation ("Count II"), Count III–Class C felony child molestation ("Count III"), and Count IV–Class D felony performing sexual conduct in the presence of a minor ("Count IV") for acts involving his granddaughter. He was subsequently sentenced to an aggregate term of forty years and found to be a credit-restricted felon. On appeal, Rogers challenges the sufficiency of the evidence to sustain his convictions. Alternatively, he contends that the trial court erred by sentencing him as a credit-restricted felon. Because we conclude that the evidence is sufficient to sustain Rogers's convictions and that Rogers was properly found to be a credit-restricted felon, we affirm.

# Facts and Procedural History

Kelly Barresi is the mother of K.Y., who was born February 6, 2002. Christopher Yazel is the adoptive father of K.Y. Barresi and Yazel are also the parents of C.Y., who was born in 2005. Rogers is Yazel's step-father.

In or about September of 2005, Barressi, Yazel, K.Y. and C.Y. moved to Indianapolis from Michigan City. Yazel's mother Diane and Rogers eventually followed the family to the Indianapolis area. Diane and Rogers served as a support system for Barressi and Yazel and frequently babysat for K.Y. and C.Y.

Diane and Rogers typically babysat for the children at either their residence in Carmel or Yazel's apartment.

[4] On one occasion when Rogers was babysitting for then-six-year-old K.Y. at his residence in Carmel, Rogers inappropriately touched K.Y. by rubbing "[i]n between" her labia for approximately ten to fifteen minutes. Tr. Vol. II p. 246. Rogers instructed K.Y. not to tell anyone. K.Y. indicated that similar acts occurred "more than once" at Rogers's home "[w]henever [Rogers] got the chance to babysit [K.Y. and C.Y.] alone." Tr. Vol. II p. 247. Similar acts also occurred when Rogers babysat for K.Y. at Yazel's apartment when K.Y. was seven or eight years old.

[5] On another occasion when K.Y. was six or seven years old, K.Y. went with Rogers from his residence in Carmel to a nearby Dairy Queen. While in the Dairy Queen parking lot, Rogers started tickling and rubbing K.Y.'s vagina with his hand over her clothes. Rogers again instructed K.Y. "[d]on't tell." Tr. Vol. III p. 3.

[6] On yet another occasion when Rogers was babysitting for K.Y., Rogers took K.Y. into an upstairs bedroom of Yazel's apartment and "touched [her] vagina with his penis." Tr. Vol. III p. 5. Rogers took K.Y.'s "pants off and pulled [her] under down and started rubbing [her] with his hand again and put his penis … [i]n between" her labia. Tr. Vol. III p. 5. Rogers's conduct lasted for five or ten minutes and made K.Y. feel "[c]onfused and uncomfortable." Tr. Vol. III p. 5. K.Y. was seven or eight years old during this occurrence.

Following one of the instances of touching in Yazel's apartment, Rogers collected lotion from an upstairs bedroom and rubbed lotion on his penis while in K.Y.'s presence.

[7] When K.Y. was about eight or nine years old, she began doing "everything in [her] power to avoid" Rogers. Tr. Vol. III p. 3. As she grew older, K.Y. developed physical and verbal "tics" and, when she was twelve years old, began engaging in self-harming behaviors. Tr. Vol. II p. 222. On February 12, 2018, K.Y. cut her wrists after an argument with Barresi. Barresi took K.Y. to the hospital where K.Y. first disclosed Rogers's prior inappropriate actions. K.Y. was hesitant to disclose Rogers's actions because she thought nothing could be done about it.[1] She also "wasn't sure if [she] would be believed" because Rogers "has been made out to seem like a person who loves his family and God and is hard working, and [K.Y.] didn't know if they would believe a troubled teenager who had this happen so long ago." Tr. Vol. III pp. 9, 10. Following disclosure, K.Y. has seemed happier, smiled more, been more social and affectionate, and has experienced an improved relationship with Yazel. K.Y. "seemed to just have this weight lifted off of her shoulders, that she had let go of this secret and was instantly different and better." Tr. Vol. II p. 223.

[8] On February 23, 2018, the State charged Rogers with Counts I through IV. The matter proceeded to a three-day jury trial. During trial, K.Y. detailed numerous

---

[1] K.Y. falsely believed that nothing could be done after learning about statutes of limitation on "Law & Order: Special Victims Unit." Tr. Vol. III p. 11.

instances of molestation by Rogers. On May 15, 2019, the jury found Rogers guilty as charged. The trial court subsequently sentenced Rogers to terms of forty years on each of Counts I and II, six years on Count III, and three years on Count IV, all of which were ordered to be served concurrently for an aggregate forty-year sentence. The trial court also found Rogers to be a credit-restricted felon.

# Discussion and Decision

[9] On appeal, Rogers contends that the evidence is insufficient to sustain his convictions. Alternatively, he contends that the trial court erred in sentencing him as a credit-restricted felon.

## I. Sufficiency of the Evidence

[10] "Our standard of review for challenges to the sufficiency of the evidence is well-settled." *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015).

> We do not reweigh evidence or reassess the credibility of witnesses when reviewing a conviction for the sufficiency of the evidence. We view all evidence and reasonable inferences drawn therefrom in a light most favorable to the conviction, and will affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.

*Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013) (internal citation and quotation omitted). This is because the factfinder, and not the appellate court, "is obliged

to determine not only whom to believe, but also what portions of conflicting testimony to believe, and is not required to believe a witness's testimony[.]" *Perry v. State*, 78 N.E.3d 1, 8 (Ind. Ct. App. 2017) (internal quotation and brackets omitted). Further, "the uncorroborated testimony of a child victim is sufficient to support a conviction for child molesting." *Stewart v. State*, 768 N.E.2d 433, 436 (Ind. 2002).

## A. Counts I & II

Rogers challenges his convictions under Counts I and II, arguing that the evidence is insufficient to prove that he committed two counts of Class A felony child molesting. In order to prove that Rogers committed these offenses, the State was required to prove that Rogers, on two separate occasions, being at least twenty-one years of age, performed or submitted to sexual intercourse or sexual deviate conduct with a child under fourteen years of age. Ind. Code § 35-42-4-3(a).

The State alleged in Count I that between February 6, 2008 and May 31, 2012, "Rogers, a person of at least twenty-one (21) years of age, did perform deviate sexual conduct with K.Y., a child under the age of fourteen years." Appellant's App. Vol. II p. 19. The State alleged in Count II that between February 6, 2008 and May 31, 2012, "Rogers, a person of at least twenty-one (21) years of age, did perform sexual intercourse or deviate sexual conduct with K.Y., a child under the age of fourteen years … such conduct involving the penis of [Rogers] and the vagina of K.Y." Appellant's App. Vol. II p. 19. Penetration "may be proven by evidence of any penetration of the female sex organ, including

external genitalia such as the vulva or labia." *Adcock v. State*, 22 N.E.3d 720, 728 (Ind. Ct. App. 2014) (citing *Short v. State*, 564 N.E.2d 553, 559 (Ind. Ct. App. 1991)). Deviate sexual conduct includes the penetration of the sex organ with a finger. *See Simmons v. State*, 746 N.E.2d 81, 86 (Ind. Ct. App. 2001), *trans. denied*.

[13] Rogers often babysat for K.Y. at his residence in Carmel. On one such occasion when K.Y. was six years old, Rogers, while alone in a room with K.Y., removed K.Y.'s jeans, "pulled [her] underwear down," and "started touching" her vagina. Tr. Vol. II p. 245. While doing so, Rogers rubbed K.Y. "[i]n between" the labia for approximately ten to fifteen minutes. Tr. Vol. II p. 246. Rogers told K.Y. "[s]omething along the lines of don't tell anyone," making her feel "[w]eird" and "[u]ncomfortable." Tr. Vol. II p. 246. K.Y. indicated that similar acts occurred "more than once" at Rogers's home "[w]henever [Rogers] got the chance to babysit [K.Y. and C.Y.] alone." Tr. Vol. II p. 247.

[14] K.Y. testified to another instance of molestation that occurred when she was seven or eight years old in Yazel's two-story townhome apartment. On this occasion, Rogers and her grandmother were babysitting for her and C.Y. when Rogers took her upstairs into her father's bedroom alone. Rogers "asked [C.Y.] if [her] jeans were uncomfortable," removed her jeans and underwear, "laid [her] down on the bed," and started licking her vagina. Tr. Vol. II p. 249. Rogers also rubbed C.Y.'s vagina "[i]n between" her labia with his hand. Tr. Vol. II p. 250. When C.Y. attempted to yell for her grandmother, Rogers "put

his hand over [her] mouth." Tr. Vol. II p. 250. This encounter lasted approximately five or ten minutes and made K.Y. feel "[w]eird and uncomfortable." Tr. Vol. II p. 250. As with prior instances of molestation, Rogers again instructed K.Y. "[d]on't tell anybody." Tr. Vol. II p. 250. Specifically, he told her "this is what all grandfathers do and that he did it to all [her] cousins and that it was okay." Tr. Vol. III p. 2.

[15] K.Y. further testified that on another instance in Yazel's apartment when she was seven or eight, Rogers "touched [her] vagina with his penis." Tr. Vol. III p. 5. On this occasion, Rogers took K.Y.'s pants off and pulled her underwear down. He then "started rubbing [her] with his hand again and put his penis … [i]n between" her labia. Tr. Vol. III p. 5. Rogers's conduct lasted for five or ten minutes and made K.Y. feel "[c]onfused and uncomfortable." Tr. Vol. III p. 5.

[16] It is uncontested that Rogers, who was born on December 19, 1955, was well over the age of twenty-one when he committed all of the above-described acts. K.Y. detailed multiple occurrences of molestation, some involving sexual deviate conduct and at least one involving sexual intercourse. K.Y.'s testimony is sufficient to prove that Rogers committed Class A felony child molesting as charged in Counts I and II.[2]

---

[2] We note that in challenging the sufficiency of the evidence to sustain his conviction under Count II, Rogers argues that the State failed to prove proper venue. However, Rogers has waived his challenge relating to venue because he did not raise any objection or challenge to venue at trial. *See Floyd v. State*, 503 N.E.2d 390, 393 (Ind. 1987) ("Many times this Court has held that a defendant waives error relating to venue when he fails to make an objection at the appropriate time in the trial court."); *see also Martin v. State*, 247 Ind. 592, 594

# B. Count III

[17] Rogers challenges his conviction under Count III, arguing that the evidence is insufficient to prove that he committed Class C felony child molesting. In order to prove that Rogers committed Class C felony child molesting, the State was required to prove that Rogers, with a child under fourteen years of age, performed or submitted to any fondling or touching of either himself or the child with the intent to arouse or to satisfy the sexual desires of either himself or the child. Ind. Code § 35-42-4-3(b).

[18] The State alleged that between February 6, 2008 and May 31, 2012, Rogers performed "fondling or touching with K.Y., a child under the age of fourteen years … with the intent to arouse or satisfy the sexual desires of the child or defendant." Appellant's App. Vol. II pp. 19–20. K.Y. testified that when she was six or seven years old, she went with Rogers from his residence in Carmel to a nearby Dairy Queen. While in the Dairy Queen parking lot, Rogers started tickling and rubbing K.Y.'s vagina with his hand over her clothes. Rogers instructed K.Y. "[d]on't tell." Tr. Vol. III p. 3.

[19] In challenging his conviction, Rogers argues that the evidence is insufficient to prove that he acted with the intent to arouse either his or K.Y.'s sexual desires. "The intent element of child molesting may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and

219 N.E.2d 902, 904 (1966) ("In the present case the question of venue was not raised in the trial court and therefore could not properly have been raised for the first time on appeal.").

usual sequence to which such conduct usually points." *Bass v. State*, 947 N.E.2d 456, 460 (Ind. Ct. App. 2011), *trans. denied*. Rogers's conduct together with the natural and usual sequence to which such conduct usually points supports the inference that Rogers intended to arouse either his or K.Y.'s sexual desires when he tickled and rubbed K.Y.'s sex organ with his hand. The evidence is sufficient to sustain Rogers's conviction for Class C felony child molesting.

## C. Count IV

[20] Rogers also challenges the sufficiency of the evidence to prove that he committed Class D felony performing sexual conduct in the presence of a minor. In order to prove that Rogers committed this crime, the State was required to prove that Rogers, with a child under fourteen years of age, touched or fondled himself in the presence of the child with the intent to arouse or satisfy the sexual desires of either himself or the child. Ind. Code § 35-42-4-5(c)(3).

[21] The State alleged that between February 6, 2008 and May 31, 2012, "Rogers, being at least eighteen years of age … did knowingly or intentionally fondle or touch himself in the presence of K.Y., a child under the age of fourteen, … with the intent to arouse or satisfy the sexual desires of [Rogers] or K.Y." Appellant's App. Vol. II p. 20. K.Y. testified that following one of the instances of molestation that occurred in Yazel's apartment, Rogers went into the bathroom and collected lotion which he then rubbed on his penis in front of K.Y.

It is uncontested that K.Y. was younger than fourteen and Rogers was well over eighteen years of age when he committed this act. Also, given that Rogers rubbed the lotion onto his penis immediately after he inappropriately touched K.Y., one can reasonably infer that he did so with the intent to arouse either his or K.Y.'s sexual desires. The evidence is sufficient to sustain Roger's conviction for Class D felony performing sexual conduct in the presence of a minor.[3] *See Bass*, 947 N.E.2d at 460.

## II. Credit-Restricted Felon Classification

A defendant's status as a credit-restricted felon is relevant to his assignment to a credit-time class and, in turn, affects his accrual of credit time toward his sentence. *See Neal v. State*, 65 N.E.3d 1139, 1141 (Ind. Ct. App. 2016). Indiana Code section 35-41-1-5.5, which went into effect on July 1, 2008, defines credit-restricted felon as "a person who has been convicted of … [c]hild molesting involving sexual intercourse [or] sexual deviate conduct … if: (A) the offense is committed by a person at least twenty-one (21) years of age; and (B) the victim is less than twelve (12) years of age."

In arguing that the trial court erred in classifying him as a credit-restricted felon, Rogers asserts that his classification as a credit-restricted felon under Count I violates the constitutional prohibition of ex post facto laws. "Both the United

---

[3] Rogers challenges his conviction under Count IV by arguing that the State failed to prove proper venue. However, for the reasons set forth in Footnote #2 on page 9, Rogers's venue challenge fails.

States Constitution and the Indiana Constitution prohibit ex post facto laws." *Upton v. State*, 904 N.E.2d 700, 705 (Ind. Ct. App. 2009). "The analysis is the same under both." *Id.* (internal quotation omitted). "To fall within the ex post facto prohibition, a law must be retrospective—that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it." *Id.* (internal quotation omitted).

[25] As the State seems to acknowledge, it would constitute an impermissible violation of ex post facto prohibitions to attach the credit-restricted felon classification to Count I, which included a time frame before the statute creating the classification was enacted, *i.e.*, May of 2008 to June 30, 2008. The State argues, however, that Rogers's classification as a credit-restricted felon is proper given that the trial court clearly indicated in its oral sentencing statement that the classification attached to Count II. When oral and written sentencing statements conflict, we examine the statements together to discern the intent of the sentencing court. *See Walker v. State*, 932 N.E.2d 733, 738 (Ind. Ct. App. 2010). In this case, the trial court's intent was clear. In its oral sentencing statement, the trial court found Rogers to be a credit-restricted felon with regards to the actions which occurred when K.Y. was seven or eight years old. There is no question that K.Y. turned seven after Indiana Code section 35-41-1-5.5 went into effect and that all of the charged conduct in Count II occurred when K.Y. was seven or eight years old. It would not violate ex post facto prohibitions to classify Rogers as a credit-restricted felon as to Count II. The trial court, therefore, properly classified Rogers as a credit-restricted felon.

[26]     The judgment of the trial court is affirmed.

Robb, J., and Altice, J., concur.